IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TURKEY CREEK COMMUNITY INITIATIVES<br>  14439 Rippy Road<br>  Gulfport, Mississippi<br><br>AND<br><br>NORTH GULFPORT COMMUNITY LAND<br>CONSERVANCY, INC.<br>  8208 Ohio Street<br>  Gulfport, Mississippi<br><br>         *Plaintiffs,*<br><br>*v.*<br><br>UNITES STATES ARMY CORPS OF<br>ENGINEERS<br>  441 G Street, N.W.<br>  Washington, D.C.<br><br>  <u>Serve</u>: Office of the Inspector General CEIG<br>       7701 Telegraph Road<br>       Alexandria, Virginia  22315<br><br>         *Defendant.* | **Civil Action No. :**<br><br>**COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs state and allege as follows:

## I.    NATURE OF THE ACTION

1.    This action, brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, <u>et seq.</u>, the Clean Water Act ("CWA"), 33 U.S.C. § 1251, <u>et seq.</u>, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, <u>et seq.</u>, seeks review of the final agency action taken by Defendant, the United States Army Corps of Engineers (the "Corps"), in issuing Regional General Permit SAM-20 (the "RGP") on May 23, 2007.  This

permit was purportedly issued pursuant to the authority granted to the Corps under § 404 of the CWA, 33 U.S.C. § 1344. The RGP permits the dredge and fill of jurisdictional waters of the United States contained within the Mobile, Alabama District, Regulatory Division's Geographic Boundary of Hancock, Harrison, Jackson, Pearl River, Stone and George Counties, Mississippi. This region hosts many acres of vital wetlands which serve to buffer inland communities from the ravages of hurricanes and inclement weather.

      2.     Plaintiffs, Turkey Creek Community Initiatives ("TCCI") and North Gulfport Community Land Conservancy, Inc. ("NGCLC") (together, "Plaintiffs") assert the following claims against the Corps: First, that the Corps violated NEPA because it failed to complete an Environmental Impact Statement ("EIS") as required by NEPA, 42 U.S.C. § 4332(2)(C). A permit issued by the U.S. Army Corps of Engineers under § 404 of the CWA is a federal action to which NEPA applies. In the alternative, Plaintiffs assert that the Environmental Assessment ("EA") prepared by the Corps in connection with the approval of the RGP is inadequate under NEPA. Second, Plaintiffs assert that the Corps violated NEPA by unlawfully failing to analyze the direct, indirect, secondary and cumulative environmental impacts resulting from the RGP. Third, Plaintiffs assert that the Corps violated its own regulations and statements of policy designed to ensure compliance with NEPA, the CWA and other laws and therefore acted in a manner which is arbitrary, capricious, and an abuse of discretion in violation of the APA, NEPA and the CWA.

## II.    JURISDICTION AND VENUE

      3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57 authorize the declaratory relief requested. Injunctive relief is authorized by 28 U.S.C. § 2202. Judicial review of this final agency action is authorized by §§ 10(a), 10(c), and 10(e) of the APA, 5 U.S.C. §§ 702, 704 and 706.

4.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(e) and 5 U.S.C. 703.

## III.    PARTIES

5.    The North Gulfport Community Land Conservancy, Inc. ("NGCLC") is a non-profit organization, headquartered in Gulfport, Mississippi, formed in 2004 in an effort to address the environmental degradation, wetlands filling, and land speculation and is dedicated to the revitalization of the historic African American community of North Gulfport. This revitalization is addressed through a variety of means including the creation and preservation of affordable housing, involvement in economic development opportunities, and the improvement of local community arts programs. It is the first Community Land Trust in southern Mississippi. This grassroots organization is in the process of developing multiple units of affordable housing for hurricane survivors in North Gulfport. The NGCLC is a membership organization run by its nine board members that represent the North Gulfport community of roughly 6,000 individuals. Its members live in Harrison County, one of the several counties covered by the RGP, and are currently and continue to be impacted by the dredging and filling of wetlands which have made their communities increasingly susceptible to flooding.

6.    Turkey Creek Community Initiatives ("TCCI") is an innovative non-profit community development corporation engaged in the comprehensive revitalization of coastal Mississippi's low-income, historic, and environmentally challenged Turkey Creek community and watershed. Community members organized TCCI in 2003 to conserve, restore and utilize for education and other socially beneficial purposes the unique cultural, historical and ecological assets of their irreplaceable community, creek and coastal stream basin. TCCI has provided direct hurricane relief throughout Harrison County, spearheading local and regional recovery planning in an effort to ensure a healthy, just and environmentally sustainable recovery for the

entire gulf coast community. TCCI has eleven board members and a general membership of

residents from Gulfport and Biloxi, Mississippi. Its members live in Harrison County, one of the

several counties covered by the RGP, and are currently and continue to be impacted by the

dredging and filling of wetlands which have made their communities increasingly susceptible to

flooding.

    7.  Defendant United States Army Corps of Engineers is a branch of the

Department of the Army. The Corps is authorized to issue permits for the discharge of dredged

or fill material into navigable waters of the United States pursuant to section 404 of the CWA, 33

U.S.C. § 1344.

# IV. STATUTORY AND REGULATORY FRAMEWORK

### A. Clean Water Act and Implementing Regulations

    8.  The stated objective of the Clean Water Act, 33 U.S.C. §§ 1251 et seq., is

to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."

33 U.S.C. § 1251. Regulations promulgated pursuant to the CWA govern the discharge of

dredged and fill materials into waters of the United States, including wetlands. The regulations

establish highly stringent criteria for evaluating proposed discharges of dredged and fill materials

in order to protect aquatic systems and avoid rampant, unchecked discharges into such systems.

The "Guidelines for Specification of Disposal Sites for Dredged or Fill Material" (the

"Guidelines"), codified at 40 C.F.R. Part 230, are regulations promulgated by the Environmental

Protection Agency ("EPA") concerning CWA permitting for dredge and fill activities. The

Guidelines articulate the highly protective nature of the federal regulatory structure. Certain of

the policies and purposes underlying the Guidelines are as follows:

     (c) Fundamental to these Guidelines is the precept that dredged or
     fill material should not be discharged into the aquatic ecosystem,
     unless it can be demonstrated that such a discharge will not have

an unacceptable adverse impact either individually or in combination with known and/or probable impacts of other activities affecting the ecosystems of concern.

(d)  From a national perspective, the degradation or destruction of special aquatic sites, such as filling operations in wetlands, is considered to be among the most severe environmental impacts covered by these Guidelines.  The guiding principle should be that degradation or destruction of special sites may represent an irreversible loss of valuable aquatic resources.

40 C.F.R. § 230.1(c) & (d).

9.     The Corps is the delegated federal agency responsible for administering the issuance of either individual or general permits for the filling of waters of the United States, and the Corps has established regulations concerning their issuance.  See 33 C.F.R. Parts 320-331 and 33 C.F.R. Part 230.  The EPA is the delegated federal agency responsible for administering the CWA.  The EPA has promulgated the Guidelines, which govern dredge and fill permit application review and emphasize the fundamental importance of wetland preservation.  See 40 C.F.R. §§ 230.1-230.80.

10.     The CWA requires all persons who wish to discharge dredge or fill material into waters of the United States to acquire first a federal permit.  See 33 U.S.C. §§ 1311(a), 1344(a) and (e).  "Waters of the United States" is defined to include navigable waterways and "[a]ll other waters, such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sand flats, wetlands, sloughs, . . . the use, degradation, or destruction of which could affect interstate or foreign commerce including any such waters." 33 C.F.R. § 328.3(a)(3).  "Waters of the United States" also include wetlands adjacent to other waters included within the definition.  See 33 C.F.R. § 328.3(a)(7).  The Corps further recognizes in the preamble to its current regulations that "waters of the United States" includes waters "[w]hich are or would be used as habitat for endangered species." 51 Fed. Reg. 41206, 41217.

11.     Wetlands and other aquatic systems subject to federal jurisdiction have special, protective criteria for permitting evaluation.  The regulations governing the issuance of § 404 permits for alteration of wetlands are codified at 33 C.F.R. §§ 320-330 and 40 C.F.R. §§ 230.1-230.80.  These regulations establish very stringent criteria militating against wetland modification.  The regulations recognize the value of wetlands preservation, decry their piecemeal destruction, and clearly set forth a presumption against allowing a permit that alters wetlands:

> No permit will be granted which involves the alteration of wetlands identified as important [in the regulation] . . . unless the district engineer concludes . . . that the benefits of the proposed alteration outweigh the damage to the wetlands resource.  In evaluating whether a particular discharge activity should be permitted, the district engineer shall apply the section 404(b)(1) guidelines.

33 C.F.R. § 320.4(b)(4).

12.     The fundamental importance of wetland preservation is further emphasized in the Guidelines, which require the a permitting authority to "determine in writing the potential short-term or long-term effects of a proposed discharge of dredged or fill material on the physical, chemical, and biological components of the aquatic environment . . . ."  40 C.F.R. § 230.11.  The regulations then provide very elaborate, detailed criteria for evaluating the potential impacts posed by dredge and fill activities in waters of the United States.  40 C.F.R. §§ 230.20-230.61.

13.     Indeed, the CWA regulations establish a presumption that a dredge and fill permit should *not* be issued if the activity seeking the discharge is not water dependent:

> Where the activity associated with a discharge which is proposed for a special aquatic site . . . does not require access or proximity to or siting within the special aquatic site in question to fulfill its basic purpose (i.e., is not "water dependent"), practicable alternatives that do not involve special aquatic sites are presumed

> to be available, unless clearly demonstrated otherwise.  In addition,
> where a discharge is proposed for a special aquatic site, all
> practicable alternatives to the proposed discharge which do not
> involve a discharge into a special aquatic site are presumed to have
> less adverse impact on the aquatic ecosystem, unless clearly
> demonstrated otherwise.

40 C.F.R. § 230.10(a)(3).

14.    The CWA regulations further provide that a "public interest review" is

among the "policies [that] shall be applicable to the review of all applications for [Corps dredge

and fill] permits." 33 C.F.R. § 320.4.  The regulation requiring a public interest review provides,

in relevant part:

> The decision whether to issue a permit will be based on an
> evaluation of the probable impacts, including cumulative impacts,
> of the proposed activity and its intended use on the public
> interest . . . .  All factors which may be relevant to the proposal
> must be considered including the cumulative effects thereof:
> among those are conservation, economics, aesthetics, general
> environmental concerns, wetlands, historic properties, fish and
> wildlife values, flood hazards, floodplain values, land use,
> navigation, shore erosion and accretion, recreation, water supply
> and conservation, water quality, energy needs, safety . . . .

33 C.F.R. § 320.4(a)(1).  The regulations further require that the Corps evaluate the effect of a

proposed activity on wetlands because "[m]ost wetlands constitute a productive and valuable

public resource, the unnecessary alteration or destruction of which should be discouraged as

contrary to the public interest." 33 C.F.R. § 320.4(b).  Functions performed by wetlands that are

considered to be important to the public interest include use as study areas, drainage, protection

from erosion, valuable storage for storm and flood waters, ground water recharge, water

purification, and biological functions such as food chain production, habitat and nesting.  See 33

C.F.R. § 320.4(b)(2).  The public interest review regulations note that "[a]lthough a particular

alteration of a wetland may constitute a minor change, the cumulative effect of numerous

piecemeal changes can result in a major impairment of wetland resources.  Thus, the particular

wetland site for which an application is made will be evaluated with the recognition that it may be part of a complete and interrelated wetland area." 33 C.F.R. § 320.4(b)(3).

15.    Under the CWA, one may obtain permission to discharge dredged or fill materials into waters of the United States through either an individual or a general permit. See 33 U.S.C. § 1344(a) and (e); see also 33 U.S.C. § 1362(7). Individual permits are issued following a "case-by-case evaluation of a specific project involving the proposed discharge(s) . . . ." 33 C.F.R. § 323.2(g). An individual permit, therefore, is issued to allow the discharge of dredged or fill material into specific wetlands for a single project, which is subject to public review and input, and the details of which must meet various regulatory guidelines and standards. See 33 U.S.C. § 1344. An applicant seeking an individual permit must provide the Corps with, among other things, "a complete description of the proposed activity including necessary drawings, sketches, or plans" and "the location, purpose and need for the proposed activity" and must include descriptions of "[a]ll activities which the applicant plans to undertake which are reasonably related to the same project." 33 C.F.R. § 325.1(d).

16.    Conversely, a general permit may be issued on a nationwide or regional basis to allow the discharge of dredged or fill material into wetlands for an entire category or categories of activities, but only when

> (1) Those activities are substantially similar in nature and cause only minimal individual and cumulative environmental impacts; or
>
> (2) The general permit would result in avoiding unnecessary duplication of regulatory control exercised by another Federal, state, or local agency provided it has been determined that the environmental consequences of the action are individually and cumulatively minimal.

See 33 C.F.R. § 323.2(h), 33 U.S.C. § 1344(e).

B.     **NEPA and Implementing Regulations**

16.     "NEPA, first of all, makes environmental protection a part of the mandate of every federal agency and department." Calvert Cliffs' Coordinating Comm., Inc. v. United` States Atomic Energy Comm'n, 449 F.2d 1109, 1112 (D.C. Cir. 1971). "Perhaps the greatest importance of NEPA is to require . . . agencies to *consider* environmental issues just as they consider other matters within their mandates." Id. (emphasis in original). NEPA's essential purpose is "to help public officials make decisions that are based on understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." 40 C.F.R. § 1500.1(c). The Council on Environmental Quality ("CEQ") -- an agency within the Executive Office of the President -- has promulgated regulations implementing NEPA, which have been adopted by the Corps. See 40 C.F.R. §§ 1500-1508.

17.     To accomplish its purpose, NEPA requires all agencies of the federal government to prepare a "detailed statement" regarding all "major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(2)(C). This statement, known as an Environmental Impact Statement ("EIS"), must describe "(i) the environmental impact of the proposed action, (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented, (iii) alternatives to the proposed action, (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented." Id.

18.     To determine whether an agency needs to perform an EIS, the agency must prepare an environmental assessment ("EA") discussing the need for the proposed action, alternatives, and the environmental impacts of the proposed action and alternatives. See 40

C.F.R. §§ 1501.4 and 1508.9. The Corps has promulgated its own regulations implementing NEPA. See 33 C.F.R. § 230 et seq. In conjunction with CEQ's regulations, the Corps requires that an EA must "provide sufficient information to the district commander on potential environmental effects of the proposed action and, if appropriate, its alternatives . . . ." 33 C.F.R. § 230.10(a).

19.     Based on the EA, and consulting regulations promulgated by the CEQ, the agency will then either prepare an EIS or issue a Finding Of No Significant Impact ("FONSI"). A FONSI is permitted only if the proposed action will not significantly affect the environment. See 33 C.F.R. § 230.11, 40 C.F.R. § 1508.13. The FONSI determination must be supported by a statement of reasoning and evidence, not merely conclusions.

## V.     FACTUAL BACKGROUND OF REGIONAL GENERAL PERMIT SAM-20

20.     Hurricane Katrina's destructive power highlighted the important role that wetlands play in storm protection and flood control. Coastal wetlands serve as the first line of hurricane defense, helping to decrease storm surges and dissipate hurricane forces. Once a storm makes landfall, both inland and coastal wetlands continue to protect against hurricane damage by collecting and controlling floodwaters. In hurricane prone areas, such as coastal Mississippi, the importance of wetlands cannot be overstated.

21.     Plaintiffs, and their members, experienced the devastation of flooding brought on by Hurricane Katrina. Their homes and offices took in several feet of water, causing significant damage to their real and personal property.

22.     On October 10, 2006, the Army Corps published a proposed RGP that would have permitted the discharge of dredged and fill materials into up to five acres of jurisdictional waters of the United States contained within the Mobile District, Regulatory Division's Geographic Boundary of Hancock, Harrison, Jackson, Pearl River, Stone and George

Counties, Mississippi. After receiving approximately 7,500 comments from the public, all but 45 in opposition to the proposed RGP, the Corps revised its proposed RGP. The second proposed RGP, published on February 9, 2007, reduced the acreage of impacted waters from five to three, excluded commercial buildings, and exempted the Turkey Creek watershed which accounts for only 0.4% of the 2.5 million acres covered by the RGP. Plaintiffs, as well as many other concerned community groups, submitted comments in opposition of the revised RGP.

23.     Despite the demonstrated importance of wetlands and the immense public opposition to the first and second proposed RGPs, on May 23, 2007, the Corps issued the RGP to permit the discharge of dredged and fill materials into jurisdictional waters of the United States contained within the Mobile District, Regulatory Division's Geographic Boundary of Hancock, Harrison, Jackson, Pearl River, Stone and George Counties, Mississippi. This region hosts many acres of vital wetlands which serve to buffer inland communities from the ravages of hurricanes and inclement weather.

24.     The RGP authorizes dredge and fill activities required for the construction or expansion of residential building foundations and building pads and attendant features that are necessary for the use and maintenance of the structures. Residential development authorized by the RGP includes multiple and single unit developments. Attendant features authorized by the RGP include, but are not limited to, roads, parking lots, garages, yards, utility lines, and stormwater management facilities. No public review or comment is required for any activity authorized by the RGP.

25.     Each project authorized by the RGP may impact up to three acres of "low quality" wetlands. Despite the demonstrated importance of wetlands, the RGP allows the destruction of wetlands on an unprecedented level. Generally, the upper limit of areas that can

be authorized for wetland fill under the Corps's nationwide general permits is half an acre. Since the RGP allows each project authorized thereunder to impact up to three acres of wetlands, the RGP would allow wetland development in hurricane-prone areas at six times the national standard. Removal of wetlands at the scale authorized by the RGP will significantly worsen flooding during the next hurricane.

26.     Increased development in wetlands authorized by the RGP would exacerbate current flood control problems and cause other ecological damage. The RGP is an irresponsible approach to ecological and flood control management in the wake of Hurricane Katrina.

27.     The RGP is effective until May 23, 2009. Projects authorized under the RGP that have commenced or are under contract to commence on May 23, 2009 may be completed within twelve months following such date.

28.     In connection with the RGP, the Corps also issued on May 23, 2007 its Environmental Assessment, 404(b)(1) Analysis, Statement of Findings, and Decision Document (the "Environmental Assessment").

29.     In the Environmental Assessment, the Corps estimates that approximately 48,416.60 acres of wetlands in coastal Mississippi have the potential to be affected (i.e. filled in) by the RGP. See Environmental Assessment at p. 32.

30.     While the Corps is required to evaluate alternatives to the activities authorized by the RGP, see, e.g., 40 C.F.R. §§ 1501.4 and 1508.9 and 33 C.F.R. § 230.10(a), the Corps utilized less than two pages in the Environmental Assessment to assess only two alternatives: (i) not to issue the RGP or (ii) to issue the RGP. See Environmental Assessment at pp. 27-28. In effect, the Environmental Assessment proposes the RGP as the only alternative to

taking no action at all.

31.     The Corps concluded that the activities authorized by the RGP will not significantly affect the quality of the human environment and, therefore, the Corps did not prepare an EIS.

## VI.     PLAINTIFFS' CLAIMS FOR RELIEF

### A.     COUNT ONE (NEPA)

32.     Plaintiffs repeat and incorporate herein by reference the allegations set forth in paragraphs 1-29.

33.     The Corps' determination that the RGP-SAM-20 should be implemented as a means to save time in the permitting review process and foregoing public notice of a proposed project is contrary to NEPA and is arbitrary, capricious and an abuse of discretion in violation of the APA, 5 U.S.C. § 706(2).

34.     In the alternative, the EA prepared by the Corps for the RGP-SAM-20 is arbitrary, capricious and an abuse of discretion in violation of the APA, 5 U.S.C. § 706(2).

35.     The Corps' finding of no significant impact ("FONSI") and Environmental Assessment ("EA") analyzing the direct, indirect, secondary and cumulative environmental impacts of the RGP-SAM-20 authorizing the general filling of up to three acres of "low-quality" wetlands is contrary to the NEPA, 42 U.S.C. § 4332(2)(C), the Mississippi Department of Environmental Quality and Mississippi Department of Marine Resources implementing regulations, and is arbitrary, capricious, and an abuse of discretion, in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

36.     The Corps' failure to fully evaluate less damaging alternatives to RGP-SAM-20 or avoidance of dredge and fill in waters of the United States, as required by NEPA, is action that is arbitrary, capricious and an abuse of discretion in violation of the APA, 5 U.S.C.

§ 706(2).

## B.      COUNT TWO (CWA and CORPS REGULATIONS)

37.     Plaintiffs repeat and incorporate herein by reference the allegations set forth in paragraphs 1-34.

38.     In failing to follow its own regulations and statements of policy designed to ensure compliance with the CWA, NEPA and other laws, the Corps has violated its own regulations, and has therefore acted in a manner which is arbitrary, capricious, and an abuse of discretion, in violation of the APA, 5 U.S.C. § 706(2).  These violations include, but are not limited to:

(a)     In issuing RGP-SAM-20, which has more than a minimal impact on the environment in Mississippi, the Corps has violated the CWA.

(b)     In authorizing dredge and fill in up to three acres of wetlands which serve as valuable storage areas for storm and flood waters, the Corps has violated CWA regulation 33 C.F.R. § 320.4(b)(2)(v).

(c)     The Corps failed to engage in the sequencing guidelines evaluation set forth in 33 C.F.R. §230.10, which require the evaluation of "practicable alternatives" to the proposed discharges into waters of the United States when the proposed activity is not water-dependent.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Honorable Court will:

39.     Declare that the Corps of Engineers' issuance of the RGP-SAM-20 was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and constitutes a violation of NEPA, the CWA and the APA;

40.     Declare that the RGP-SAM-20 is invalid and void;

Case 1:07-cv-01507-RBW    Document 1    Filed 08/23/2007    Page 15 of 15

41.    Declare that all authorizations and approvals issued by the Corps pursuant to the RGP-SAM-20 are invalid;

42.    Preliminarily and permanently enjoin filling of wetlands under RGP-SAM-20;

43.    Award Plaintiff its reasonable attorney's fees, costs and expenses pursuant to 28 U.S.C. § 2412, the Equal Access to Justice Act and Fed.R.Civ.P. 54(d); and

44.    Grant such further relief as the Court deems just and proper.

DATED: August 23, 2007                    Respectfully submitted,

Constantinos G. Panagopoulos # 430932
Charles W. Chotvacs # 484155
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
601 13th Street, N.W., Suite 1000 South
Washington, D.C.  20005-3807
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
E-mail: cgp@ballardspahr.com
E-mail: chotvacsc@ballardspahr.com

Richard M. Hluchan
Alan K. Motes
Robert S. Baranowski, Jr
Jennifer E. Simon
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999

Daria E. Neal
ENVIRONMENTAL JUSTICE PROJECT
LAWYERS' COMMITTEE FOR CIVIL
    RIGHTS UNDER LAW
1401 New York Avenue, N.W., Suite 400
Washington, D.C.  20005
Telephone: (202) 662-8600
*Counsel for Plaintiffs*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS  TURKEY CREEK COMMUNITY INITIATIVES, and NORTH GULFPORT COMMUNITY LAND CONSERVANCY, INC. | DEFENDANTS  UNITED STATES ARMY CORPS OF ENGINEERS |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Harrison Co., Mississippi<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br><br>PLEASE SEE ATTACHED | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust
☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☒ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| □ G. *Habeas Corpus/ 2255*<br>□ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ H. *Employment Discrimination*<br>□ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ I. *FOIA/PRIVACY ACT*<br>□ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ J. *Student Loan*<br>□ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| □ K. *Labor/ERISA (non-employment)*<br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ L. *Other Civil Rights (non-employment)*<br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ M. *Contract*<br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ N. *Three-Judge Court*<br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

X□ 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify)   □ 6 Multi district Litigation   □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
This Declaratory Judgment Action is brought pursuant to the Administrative Procedure Act., 5 U.S.C. Sections 551 et. seq., and the Clean Water Act, 33 U.S.C. Section 1251 et. seq., and seeks review of the final agency action taken by the Defendant, The United States Army Corp of Engineers in issuing*

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS   □ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** □ YES   X□ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   □ YES   X□ NO   If yes, please complete related case form.

DATE 8/23/07   SIGNATURE OF ATTORNEY OF RECORD _____   #484155

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

*Regional General Permit SAM-20 on May 23, 2007.

**ATTACHMENT**
**CIVIL COVER SHEET**

Constantinos G. Panagopoulos # 430932
Charles W. Chotvacs # 484155
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
601 13th Street, N.W.
Suite 1000 South
Washington, D.C. 20005-3807
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
E-mail: cgp@ballardspahr.com
E-mail: chotvacsc@ballardspahr.com

Richard M. Hluchan
Alan K. Motes
Robert S. Baranowski, Jr
Jennifer E. Simon
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999

Daria E. Neal
ENVIRONMENTAL JUSTICE PROJECT
LAWYERS' COMMITTEE FOR CIVIL
  RIGHTS UNDER LAW
1401 New York Avenue, N.W.
Suite 400
Washington, D.C. 20005
Telephone: (202) 662-8600