IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TURKEY CREEK COMMUNITY INITIATIVE, NORTH GULFPORT COMMUNITY LAND CONSERVANCY, INC., *and* THE GULFPORT RESTORATION NETWORK,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS<br><br>*Defendant*. | Civ. No. 1:07-cv-01507<br>Judge Reggie B. Walton |

## **DEFENDANT'S MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF MISSISSIPPI**

Defendant United States Army Corps of Engineers (Corps) hereby moves the Court to transfer the above-captioned action to the United States District Court for the Southern District of Mississippi, pursuant to 28 U.S.C. § 1404(a). The facts and authorities supporting this motion are set forth in the accompanying Memorandum of Points and Authorities in Support of Defendant's Motion to Transfer Venue.

The Corps further moves the Court to extend its obligation to answer or otherwise respond to Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief until 30 days following judicial resolution of the venue issue, or at a time to be determined by the transferee court, whereas:

1.      Defendant believes the interests of justice and convenience of the parties compel a transfer of venue to the Southern District of Mississippi;

2.      This is Defendant's first request for an extension of time; and

3.      Granting the extension will have no effect on any other previously scheduled deadlines.

Pursuant to Local Civil Rule 7(m), Defendant's counsel has conferred with Plaintiffs' counsel regarding the motion. Plaintiffs' counsel indicated that Plaintiffs will oppose the motion.

Date: October 22, 2007

                    Respectfully submitted,

                    RONALD J. TENPAS
                    Acting Assistant Attorney General

By:    /s/ Samantha Klein
       SAMANTHA KLEIN
       Trial Attorney
       United States Department of Justice
       Natural Resources Section
       P.O. Box 663
       Washington, D.C. 20044-0663
       Tel: (202) 305-0474
       Facsimile: (202) 305-0506
       Email: samantha.klein@usdoj.gov

       /s/ Jon M. Lipshultz
       JON M. LIPSHULTZ
       Environmental Defense Section
       Environment & Natural Resources Division
       U.S. Department of Justice
       P.O. Box 23986
       Washington, D.C. 20026-3986
       Tel: (202) 514-2191
       Email: jon.lipshultz@usdoj.gov

Of Counsel:

THOMAS G. F. LANDRY
Assistant District Counsel
U.S. Army Corps of Engineers
Mobile District

Mobile, Alabama 36628

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TURKEY CREEK COMMUNITY INITIATIVE, NORTH GULFPORT COMMUNITY LAND CONSERVANCY, INC., *and* THE GULFPORT RESTORATION NETWORK,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS<br><br>*Defendant.* | Civ. No. 1:07-cv-01507<br>Judge Reggie B. Walton |

**[PROPOSED] ORDER**

This matter is before the court on Defendant's Motion to Transfer Venue to the Southern District of Mississippi. Upon consideration of Defendant's Motion and Plaintiffs' opposition thereto, it is hereby

ORDERED that Defendant's Motion to Transfer Venue to the Southern District of Mississippi be granted; and

ORDERED that Defendant's deadline for filing an answer or other response to Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief be extended 30 days from the date of this Order, or as the Southern District of Mississippi sees fit.

Dated this ___ day of _____, 2007

_____
Reggie B. Walton
United States District Judge

**ATTORNEYS TO BE NOTICED**

<u>Plaintiffs' Counsel</u>:

CONSTANTINOS G. PANAGOPOULOS
Ballard Spahr Andrews & Ingersol, LLP
601 13th Street, NW
1000 South
Washington, DC 20005-3807
(202) 661-2202
Fax: (202) 661-2299
Email: cgp@ballardspahr.com

ALAN K. MOTES
Ballard Spahr Andrews & Ingersol, LLP
1225 17th Street
Suite 2300
Denver, CO 80202-5596
(303) 299-7327
Fax: (303) 382-4627
Email: motesa@ballardspahr.com

JENNIFER E. SIMON
Ballard Spahr Andrews & Ingersol, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
(215) 864-8337
Fax: (215) 864-9914

RICHARD M. HLUCHAN
Ballard Spahr Andrews & Ingersol, LLP
Plaza 1000
Main Street
Suite 500
Voorhees, NJ 08043-4636
(856) 761-3420
Fax: (856) 761-9020

ROBERT S. BARANOWSKI
Ballard Spahr Andrews & Ingersol, LLP
Plaza 1000
Main Street
Suite 500
Voorhees, NJ 08043-4636
(856) 761-3432
Fax: (856) 761-9025

Defendant's Counsel:

SAMANTHA KLEIN
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0474
Facsimile: (202) 305-0506
Email: samantha.klein@usdoj.gov

JON M. LIPSHULTZ
Environmental Defense Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 23986
Washington, D.C.  20026-3986
Tel: (202) 514-2191
Email: jon.lipshultz@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TURKEY CREEK COMMUNITY INITIATIVE, ) <br> NORTH GULFPORT COMMUNITY LAND ) <br> CONSERVANCY, INC., *and* THE GULFPORT ) <br> RESTORATION NETWORK, ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> *v*. ) <br> ) <br> UNITED STATES ARMY CORPS OF ) <br> ENGINEERS ) <br> ) <br> *Defendant.* ) <br> ) | Civ. No. 1:07-cv-01507 <br> Judge Reggie B. Walton |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE**

**INTRODUCTION**

The Defendant hereby moves to transfer this action to the United States District Court for the Southern District of Mississippi.  The action challenges the U.S. Army Corps of Engineers's (Corps) issuance of a Regional General Permit (RGP) under the Clean Water Act (CWA), 33 U.S.C. § 1344, for six counties in Southern Mississippi: Hancock, Harrison, Jackson, Pearl River, Stone, and George Counties.  The counties covered by the RGP all lie in the Southern District of Mississippi, and two of the three Plaintiff organizations are also based there. Moreover, the alleged environmental impacts are limited to the Southern District of Mississippi and the surrounding coastal area.  The interests of justice will best be served by transferring this action to the Southern District of Mississippi.

**BACKGROUND**

**I.    Factual Background**

Plaintiffs in this action challenge a decision by the Corps to issue an RGP for the discharge of dredged or fill materials into waters of the United States pursuant to section 404 of the Clean Water Act (CWA), 33 U.S.C. § 1334. The permit in question, Regional General Permit SAM-20, was issued by the Corps, Mobile District Regulatory Division, on May 23, 2007. The Corps created the RGP in response to the catastrophic damage caused in Mississippi by Hurricane Katrina in order to facilitate expedited permitting procedures and allow hurricane victims to recover and rebuild their homes in a timely manner. Envtl. Assessment 1 (Ex. 1).[1] The RGP's scope is limited to construction and expansion of residential building foundations and attendant features.

The RGP's geographical reach is limited to six counties in Southern Mississippi: Hancock, Harrison, Jackson, Pearl River, Stone and George Counties. The counties are colloquially referred to as "coastal Mississippi", and all six are located in the geographical jurisdiction of the United States District Court for the Southern District of Mississippi, Southern Division. See 28 U.S.C. § 104(b). The subject counties are also within geographical boundaries of the Corps's Mobile District Regulatory Division. The Mobile District's principal office is located in Mobile County, Alabama, which is adjacent to and abutting the subject Mississippi counties. The Mobile District's Regulatory Division also maintains a Biloxi, Harrison County, Mississippi, branch office within the geographic jurisdiction of the Southern District of

---

[1] The Environmental Assessment's introductory page is included herein as Exhibit 1. The entire document is available at http://www.sam.usace.army.mil/rd/reg/rgp/dd_ea.pdf.

Mississippi.  See id.

## II.     Legal Standard for Transfer of Venue

The Court has authority to transfer this action under 28 U.S.C. § 1404(a).  Section 1404(a) provides: "For convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The moving party bears the burden of showing venue transfer is proper.  Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996).  This burden, however, is lessened when the plaintiff's chosen forum has no factual connection to the case, and where the plaintiff and subject matter of the action have a substantial connection with the proposed transferee forum.  DeLoach v. Phillip Morris Cos., 132 F. Supp. 2d 22, 24 (D.D.C. 2000); Trout Unlimited, 944 F. Supp. at 17 (citing Harris v. Republican Airlines, Inc., 699 F. Supp. 961, 963 (D.D.C. 1988)).  Section 1404(a) grants the Court the discretion to make transfer of venue decisions on a case-by-case basis.  See Hawksbill Sea Turtle v. FEMA, 939 F. Supp. 1, 3 (D.D.C. 1996).

The threshold issue in any motion to transfer venue is whether the action could have been brought in the district to which transfer is sought.  See Van Busen v. Barrack, 376 U.S. 612, 613 (1964); Valley Cmty. Preservation Comm'n v. Mineta, 231 F. Supp. 2d 23, 44 (D.D.C. 2002); Trout Unlimited, 944 F. Supp. at 16.  If this threshold issue is answered in the affirmative, courts have then considered the other principal factors—convenience of the parties, convenience of witnesses, and the interest of justice—via a balancing of private and public interests.  See, e.g., Berenson v. National Fin. Servs., LLC, 319 F. Supp. 2d 1 (D.D.C. 2004); Valley Cmty., 231 F. Supp. 2d at 44-45.  The private considerations include: 1) plaintiff's choice of forum; 2)

defendant's choice of forum; 3) where the claims arose; 4) convenience of the parties; 5) convenience of the witnesses; and 6) ease of access to sources of proof.  Trout Unlimited, 944 F. Supp. at 16.  The public considerations include: 1) the transferee district's familiarity with the governing law; 2) congestion of the transferor and transferee districts; and 3) "the local interest in deciding local controversies at home."  Id.

## ARGUMENT

Defendant's motion to transfer venue to the Southern District of Mississippi should be granted because the action could have originally been brought in the Southern District of Mississippi and transfer is compelled by the convenience to the parties and interests of justice.

**I.    The Action Could Have Properly Been Brought in the Southern District of Mississippi Under Jurisdiction and Venue Rules.**

The threshold issue in any motion to transfer venue is whether the action could have been brought in the district to which transfer is sought.  See Van Busen, 376 U.S. at 613.  Thus, the primary issue here is whether the action could have been brought in the Southern District of Mississippi.  The present complaint hinges on questions of federal law (See Am. Compl. ¶ 1 (Doc. No. 9)), and 28 U.S.C. §1331 provides all federal district courts with subject matter jurisdiction over the claim.  As to venue, a civil action against a U.S. government agency may be heard in any district where a defendant resides or "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(e).

Here, Plaintiffs' claims relate to a permit decision covering six counties, all of which are within the Southern District of Mississippi.  See 28 U.S.C. § 104(b).  In fact, the six counties comprise the entirety of the Southern District's southern division.  Id. at § 104(b)(4).  This alone

compels a conclusion that the action could have been brought in the Southern District of Mississippi. In addition, at least one Plaintiff, North Gulfport Community Land Conservancy, is headquartered in Gulfport (Am. Compl. ¶ 5), also located within the Southern District of Mississippi. Further, all Plaintiff organizations have members in coastal Mississippi (Am. Compl. ¶¶ 5-7), an area within the Southern District. Consequently, venue is proper under 28 U.S.C. § 1391(e), and the action could have been brought in the Southern District of Mississippi.

**II.    The Balancing of Private Factors Weighs Against the District Court for the District of Columbia's Attenuated Connection to the Challenged Actions, and In Favor of the More Closely Related and Convenient Southern District of Mississippi.**

Once jurisdiction and venue are deemed proper in the transferee district, convenience of the parties and witnesses, and the interest of justice, are considered through a balancing of private and public interests. See Valley Cmty., 231 F. Supp. 2d at 44-45. Considerations for private interests include: 1) plaintiff's choice of forum; 2) defendant's choice of forum;[2] 3) where the claims arose; 4) convenience of the parties; 5) convenience of the witnesses; and 6) ease of access to sources of proof. Trout Unlimited, 944 F. Supp. at 16.

The plaintiff's choice of forum, is given great deference, but not "when the activities have little, if any, connection with the chosen forum." Valley Cmty., 231 F. Supp. 2d at 44; see also Hawksbill Sea Turtle, 939 F. Supp. at 3 (transferring venue where the case had no connection with the District of Columbia); Trout Unlimited, 944 F. Supp. at 17 ("[T]his deference is mitigated where the plaintiff's choice of forum has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'") (quoting Chung v.

---

[2] The Corps believes the Southern District of Mississippi, specifically the southern (Gulfport) division, is the more appropriate forum for the reasons stated herein.

Chrysler Corp., 903 F. Supp. 160, 165 (D.D.C. 1995)). The challenged action here lacks any significant connection with the District of Columbia.

First, none of the Plaintiffs reside in the District of Columbia. North Gulfport Community Land Conservation's headquarters are in Gulfport, Mississippi. Am. Compl. ¶ 5. Gulfport is located in the Southern District of Mississippi. See 28 U.S.C. § 104(b)(4). Southern Mississippi residents comprise some or all the three Plaintiff organizations' respective memberships. See Am. Compl. ¶¶ 5-7. In fact, Plaintiff Turkey Creek Community Initiatives appears to have a membership composed exclusively of residents in Harrison County—one of the counties covered by the RGP. See Am. Compl. ¶ 6. The Plaintiff organizations themselves are aimed at redevelopment and revitalization of North Gulfport, Mississippi, or the Gulf Region as a whole. See Am. Compl. ¶¶ 5-7. The action's only discernable connection to the District of Columbia is the fact that the Corps's national headquarter offices are located there, significantly lowering the deference to Plaintiffs' choice of forum.

Furthermore, the Court has been inclined to transfer a case when the claim at issue arose elsewhere. See, e.g., S. Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 88 (D.D.C. 2004) (granting transfer to the forum where government decisions being challenged were made); Berenson, 319 F. Supp. 2d at 4 (similarly granting motion to transfer). This factor also weighs in favor of transfer here. The RGP covers six counties, all of which are located within the Southern District of Mississippi. The RGP was issued by the Corps's District Office in Mobile County, which abuts and is adjacent to the Southern District of Mississippi. The Mobile District Office also maintains a field office in Biloxi, Mississippi. Biloxi is located in Harrison County, one of the RGP's subject counties. Thus, all decisions and alleged violations of law relating to the RGP

have occurred outside the District of Columbia—a fact strongly supporting transfer.

The present facts are strikingly similar to those in Trout Unlimited. The plaintiffs there were a Colorado-based organization, a Virginia-based organization, and an individual living in Colorado. Trout Unlmited, 944 F. Supp. 13 at 14. In deciding to transfer the case to the District of Colorado, Judge Urbina noted the District of Columbia's lack of "meaningful ties or interest in" the suit. Id. at 17. The transferee forum, on the other hand, "possesse[d] a significant and predominant interest . . . because of the impact that the resolution of this action [would] have upon the affected lands, waters, wildlife, and people of that state." Id. Judge Urbina was also careful to note that the land in question, the affected public, and the "people who are concerned about the easement's potentially negative impact upon wildlife" were located in Colorado. Id. Further, the documents in question were prepared and issued by government staff in Colorado, and all records were located there. Id. at 17-18 (specifically noting the "decision-making process at both the forest and regional level occurred in Colorado, not in Washington, D.C.").

As in Trout Unlimited, none of the Plaintiffs here are based in the District of Columbia. Also, the Southern District of Mississippi, like the District of Colorado in Trout Unlimited, is well connected to the issue. Plaintiffs allege potential wetland impact and ecological damage from flooding in the area. Am. Compl. ¶¶ 25, 26. And, as noted above, permit documents were prepared and issued by Corps staff in the Mobile District Office. These connections, weighed against the District of Columbia's attenuated link to the case, compel transfer.

Convenience of the parties also weighs in favor of transfer. All parties involved are much closer to the Southern District of Mississippi than the District Court for the District of Columbia. Plaintiffs Turkey Creek Community Initiatives and Northern Gulfport Community

Land Conservancy are Gulfport-based organizations. See Am. Compl. ¶¶ 5-6. Gulfport lies in the Southern District of Mississippi. See 28 U.S.C. § 104(b)(4). Plaintiff Gulf Restoration Network is headquartered in New Orleans, Louisiana, and the Corps office responsible for issuing the RGP is located in Mobile, Alabama. Both New Orleans and Mobile are in much closer proximity to the Southern District of Mississippi than the District Court for the District of Columbia.

Because this case is a challenge to an administrative decision, judicial review will be based on the administrative record and convenience to witnesses may be less of a concern for resolution on the merits. To the extent Plaintiffs seek preliminary or permanent injunctive relief, however, the Southern District of Mississippi is far more convenient to potential witnesses in Mississippi. Additionally, the RGP was approved by the Corps's Mobile District Office, where the overwhelming bulk of the administrative record is located. See Trout Unlimited, 944 F. Supp. at 17-18; see also Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv., No. 06-932, 2006 WL 3334956 (D.D.C. Nov. 16, 2006) (noting the voluminous record that was already present in California as a factor in favor of transfer). Access to these records, combined with the factors listed above, weigh decidedly in favor of transfer to the Southern District of Mississippi.

**III. The Balancing of Public Factors Weighs Heavily In Favor of Transfer to the Southern District of Mississippi to Ensure Local Controversies are Decided at Home.**

In addition to the private factors, the Court has also considered several public factors to determine if transfer would be in the interest of justice: 1) the transferee district's familiarity with governing law; 2) congestion of the transferor and transferee districts; and 3) "local interests in deciding local controversies at home." See Trout Unlimited, 944 F. Supp. at 16.

Federal environmental law is involved here, for which all federal districts should hold an equal familiarity. See Nat'l Wildlife Fed. v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (finding no reason to break from "the principle that the transferee federal court is competent to decide federal issues correctly").[3] Similarly, congestion of either the transferor or transferee court should be an issue. See Judicial Business of the United States Court 2006, tbl. C-3A, available at http://www.uscourts.gov/judbus2006/appendices/c3a.pdf. Thus, the first two factors do not play a strong role.

The Supreme Court, however, has emphasized the importance of deciding local issues at home. Nat'l Wildlife Fed., at 49 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)). This Court, too, has noted that controversies should be resolved at the controversy's location, even where review would be limited to analysis of the administrative record. See Trout Unlimited, 944 F. Supp. at 17 (citing Islamic Republic of Iran v. Boeing Co., 477 F. Supp. 142, 144 (D.D.C. 1979)). The Court has considered several factors when determining whether an action is local in nature, including: "where the challenged decision was made, whether the decision directly affect[s] the citizens of the transferee state, the location of the controversy, . . . whether the controversy has some national significance, and whether there was personal involvement by a DC official." Nat'l Wildlife Fed., 437 F. Supp. 2d at 49 (citations omitted).

Local resolution of local interests is particularly compelling when the current forum has

---

[3] The presence of federally-protected wetlands does not constitute a "national" connection that requires the controversy to be heard in the District of Columbia. The D.C. Circuit has rejected the contention that the District of Columbia is more competent to determine issues of federal environmental law. See Nat'l Wildlife Fed'n, 437 F. Supp. 2d at 49 ("[T]he fact that this case involves the interpretation of federal statutes does not automatically make the District of Columbia more competent to decide the case than Florida, as Plaintiffs allege.").

little or no connection to the controversy. "[J]ustice requires that such localized controversies should be decided at home." Citizen Advocates for Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983); see also Armco Steel Co. v. CXS Corp., 790 F. Supp. 311, 324 (D.D.C. 1991) (finding the interest in having local controversies decided locally is compelling); Harris, 699 F. Supp. at 963 (transferring to District of Minnesota where circumstances giving rise to dispute were centered in Minnesota and there was no nexus between the facts of the case and the District of Columbia). In Shawnee Tribe v. United States, for example, the issue was whether portions of a military reservation were transferable to the Department of Interior to be held in trust for the Tribe. 298 F. Supp. 2d 21, 22 (D.D.C. 2002). The Court decided that the lawsuit's transfer from the District of Columbia to the United States District Court in Kansas was appropriate, stating that "the most persuasive factor favoring transfer . . . is the local interest in deciding a sizable local controversy at home." Id. at 26. Central to the Court's opinion was that judicial allocation of the subject property would directly impact counties and neighborhoods in Kansas, and implicate considerable economic, political, and environmental interests. Id.[4]

The presently challenged decision is similarly one with local, not national impacts. The decision to issue the permit was made in Mobile, Alabama, and concerned several counties

---

[4] The Court used similar reasoning in Southern Utah Wilderness Alliance v. Norton, where the plaintiff sought venue in the District of Columbia for a dispute involving twenty-one parcels of land in Utah. 315 F. Supp. 2d 82 (D.D.C. 2004). There, the Court concluded that National Environmental Policy Act considerations were localized interests that "directly touch[ed] local citizens." Id. at 88. The Court granted the Government's transfer motion, stating that "[i]t makes sense that these alleged consequences would be most particularly felt in Utah, and thus that the courts of Utah would have a clear interest in resolving the dispute." Id. at 89 (citing Trout Unlimited, 944 F. Supp. at 20). Here, any review in this Court would directly impact the lands and citizens in six counties in Mississippi, and not land or residents in the District of Columbia.

located in nearby Mississippi. Plaintiffs reference the RGP area's importance in storm protection and flood control for coastal Mississippi. Am. Compl. ¶¶ 1, 20, 23. The RGP itself covers such local matters as "roads, parking lots, garages, yards, utility lines, and stormwater management facilities." Am. Compl. ¶ 24. Plaintiffs seem specifically concerned with the RGP's authorization of residential developments, undeniably a local issue. See Am. Compl. ¶ 24.

Moreover, it is the citizens of coastal Mississippi that are directly affected by a permitting program that:

> In the wake of Hurricane Katrina, [ ] is proposed to facilitate residential rebuilding efforts along the Mississippi Gulf Coast. This would allow expedited permitting procedures for impacts to low quality waters of the United States, thereby allowing the victims of the devastation to recover and rebuild in a more timely manner.

Ex. 1. Mississippians with lost or damaged homes will be directly affected by the review of this "streamlined procedure that would allow permits to be issued more quickly without compromising protection of aquatic resources." Ex. 1. Coastal Mississippians seeking to (re)construct or expand their residences are directly regulated by this regional permit. Additionally, it is these same citizens that would experience any of Plaintiffs' claimed environmental from the decision to issue the permit. Local controversy and concern is further demonstrated by the fact that the proposed RGP received over 3,000 public comments, including from the Mississippi Department of Marine Resources, Mississippi Department of Environmental Quality, and Mississippi Department of Archives and History. The interests of justice thus compel that the Southern District of Mississippi, and not the District Court for the District of Columbia, decide the controversy.

## CONCLUSION

All of the factors relevant to venue transfer under 28 U.S.C. § 1404(a) support transfer of this action to the Southern District of Mississippi. For the foregoing reasons, Defendant's motion to transfer venue to the Southern District of Mississippi should be granted.

Date: October 22, 2007

                    Respectfully submitted,

                    RONALD J. TENPAS
                    Acting Assistant Attorney General

By:   /s/ Samantha Klein
       SAMANTHA KLEIN
       Trial Attorney
       United States Department of Justice
       Natural Resources Section
       P.O. Box 663
       Washington, D.C. 20044-0663
       Tel: (202) 305-0474
       Facsimile: (202) 305-0506
       Email: samantha.klein@usdoj.gov

       /s/ Jon M. Lipshultz
       JON M. LIPSHULTZ
       Environmental Defense Section
       Environment & Natural Resources Division
       U.S. Department of Justice
       P.O. Box 23986
       Washington, D.C. 20026-3986
       Tel: (202) 514-2191
       Email: jon.lipshultz@usdoj.gov

Of Counsel:

THOMAS G. F. LANDRY
Assistant District Counsel
U.S. Army Corps of Engineers
Mobile District
Mobile, Alabama 36628

# Exhibit 1

Coastal Branch                                                                May 23, 2007
Regulatory Division


ENVIRONMENTAL ASSESSMENT, 404(B)(1) ANALYSIS, STATEMENT OF FINDINGS, AND DECISION DOCUMENT

In the wake of Hurricane Katrina, Regional General Permit (RGP) SAM-20 is proposed to facilitate residential rebuilding efforts along the Mississippi Gulf Coast. This would allow expedited permitting procedures for impacts to low-quality waters of the United States, thereby allowing the victims of the devastation to recover and rebuild in a more timely manner.

According to the National Low Income Housing Coalition, Katrina destroyed or damaged 302,000 housing units along the Gulf Coast. Of these units, 216,000 were affordable to low income households, earning 80% of the Area Median Income (AMI) or less, and 92,000 were affordable to very low income households earning less than 50% of AMI. Thus, 71% of the housing stock destroyed or damaged by Hurricane Katrina was affordable to low income households and 30% were affordable to very low income households. The statistics referenced above indicate that Katrina impacted housing for segments of the population that are least able to recover from natural disasters. The purpose of the RGP is to help replenish the housing stock in coastal Mississippi by establishing a streamlined procedure that would allow permits to be issued more quickly without compromising protection of aquatic resources. In fact, the proposed RGP requires more up front information and has more rigorous permit conditions than any other permit currently used by the Mobile District.

This document constitutes my Environmental Assessment (EA), Finding of No Significant Impact (FONSI), Statement of Findings (SOF), and review and compliance determination according to the 404(b)(1) guidelines for the proposed Regional General Permit (RGP-SAM-20).

This permit action is being taken under authority delegated to the Mobile District Engineer by the Secretary of the Army and the Chief of Engineers by Title 33, Code of Federal Regulations, Parts 320 through 325, pursuant to Section 404 of the Clean Water Act.

The term "general permit" means a Department of the Army (DA) authorization that is issued on a nationwide or regional basis for a category of activities which are substantially similar in nature and cause only minimal individual and cumulative impacts. General permits are a way to reduce the burden of the regulatory program on the public and ensure timely issuance of permits while effectively protecting aquatic resources while administering the laws and regulations which establish and govern the program. An assessment of the cumulative impacts of work authorized under the general permit is performed at that time if it is in the public interest to do so. In most instances, anyone complying with the conditions of the general permit can receive project specific authorization. Anyone not complying with the conditions of a general permit may still receive authorization via a standard permit, but the application must be individually evaluated and coordinated with third parties, including the Federal and state resource agencies. Review of an application for a standard permit takes additional time to complete as issue resolution may be required.