IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TURKEY CREEK COMMUNITY INITIATIVES, NORTH GULFPORT COMMUNITY LAND CONSERVANCY, INC., AND THE GULF RESTORATION NETWORK, | : : : : : | |
| *Plaintiffs*, | : : | |
| *v.* | : : | Civil Action No. 1:07-cv-01507 (RBW) |
| UNITES STATES ARMY CORPS OF ENGINEERS, | : : : | |
| *Defendant*. | : : : : | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

Plaintiffs Turkey Creek Community Initiatives, North Gulfport Community Land Conservancy, Inc., and The Gulfport Restoration Network (together, "Plaintiffs") respectfully request that the Court deny the United States Army Corps of Engineers' (hereinafter, "Defendant") motion to transfer this case to the United States District Court for the Southern District of Mississippi. Because the only issue in this case is whether the federal government complied with federal law, this Court is an appropriate venue and transferring this case to the Southern District of Mississippi Court would not serve the interest of justice or the parties.[1]

---

[1]     Plaintiffs offer no opposition to Defendant's motion to extend its obligation to respond to Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief until 30 days following judicial resolution of the venue issue, or at a time to be determined by the transferee court should this Court grant Defendant's motion to transfer.

# I.    STATEMENT OF THE CASE

This case involves a decision by the United States Army Corps of Engineers to allow the filling of up to approximately 48,000 acres of wetlands in the destruction zone of Hurricane Katrina, without the detailed review required by federal law and regulations.  The general permit under which Defendant proposes to allow this wetlands fill sets a national precedent, and the permit was issued upon the recommendation of the Chief of Engineers, located at Corps Headquarters in the District of Columbia.

At issue in this case is whether Defendant violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, et seq., the Clean Water Act ("CWA"), 33 U.S.C. § 1251, et seq., and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, et seq., in relation to its final agency action in issuing Regional General Permit SAM-20 (the "RGP") (a true and correct copy of the RGP is attached hereto as Exhibit A) on May 23, 2007.  This permit was purportedly issued pursuant to the authority granted to Defendant under Section 404 of the CWA, 33 U.S.C. § 1344.  The RGP permits the dredge and fill of jurisdictional waters of the United States contained within the Mobile, Alabama District, Regulatory Division's Geographic Boundary of Hancock, Harrison, Jackson, Pearl River, Stone and George Counties, Mississippi.  This region hosts many acres of vital wetlands which serve to buffer inland communities from the ravages of hurricanes and inclement weather.

Because each project authorized by the RGP may allow up to three acres of wetlands to be filled in, the RGP allows the destruction of wetlands on an unprecedented level.  Generally, the maximum area that can be authorized for wetland fill under the Defendant's nationwide general permits is half an acre.  Accordingly, the RGP would allow wetland development in hurricane-prone areas at six times the national standard.  Destruction of wetlands at the scale authorized by the RGP will significantly worsen flooding by removing the natural storm surge

barriers provided by wetlands during future hurricanes. Increased flooding and storm surge control issues as well as other ecological damage caused by the destruction of wetlands authorized by the RGP may also be exacerbated by the rising sea levels associated with climate change.

Plaintiffs assert that Defendant violated NEPA because it failed to complete an Environmental Impact Statement ("EIS") as required by NEPA, 42 U.S.C. § 4332(2)(C). A permit issued by Defendant under Section 404 of the CWA is a federal action to which NEPA applies. In the alternative, Plaintiffs assert that the Environmental Assessment ("EA") prepared by Defendant in connection with the approval of the RGP is inadequate under NEPA and under Defendant's own regulations. Second, Plaintiffs assert that Defendant violated NEPA by unlawfully failing to analyze the direct, indirect, secondary and cumulative environmental impacts resulting from the RGP. Third, Plaintiffs assert that Defendant violated its own regulations and statements of policy designed to ensure compliance with NEPA, the CWA and other laws and therefore acted in a manner which is arbitrary, capricious, and an abuse of discretion in violation of the APA, NEPA, and the CWA.

## II.    ARGUMENT

### 1.    This Case Should Not Be Transferred to the Southern District of Mississippi

Defendant seeks transfer under 28 U.S.C. § 1404(a). That statute allows courts to transfer a civil action to another jurisdiction "where it might have been brought" for the "convenience of the parties and witnesses" and "in the interests of justice." Id.[2] The Court has broad discretion to determine whether to transfer a case from one forum to another under §

---

[2]    Plaintiffs do not dispute that this action could have been filed in the Southern District of Mississippi.

1404(a).  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Shapiro, Lifschitz &

Schram, P.C. v. Hazard, 24 F. Supp. 2d 66, 71 (D.D.C. 1998).  A district court's decision

whether to transfer a case should be assessed "according to an 'individualized, case-by case

consideration of convenience and fairness.'" Ricoh, 487 U.S. 22, 29 (1988) (citing Van Dusen v.

Barrack, 376 U.S. 612, 622 (1964), superceded by statute on other grounds as stated in, Ross v.

Colo. Outward Bound School, Inc., 822 F.2d 1524, 1527 (10th Cir. 1987)).

        In exercising its discretion, a court must balance several factors including the private and

public interests at stake and the interests of justice.  See Navajo Nation v. Peabody Holding Co.,

209 F. Supp. 2d 269, 279 (D.D.C. 2002) (citing The Wilderness Soc'y v. Babbitt, 104 F.Supp. 2d

10, 12 (D.D.C. 2000)).  Considerations of the parties' private interests include the plaintiff's and

the defendant's choice of forum, where the claim arose, the location and convenience of

witnesses, and the ease of access to sources of proof.  See id.  Public interest factors include the

relative familiarity of the two forums' courts with the governing laws, the relative congestion of

the courts, and the local interest in deciding local controversies at home.  See id.

        When weighing these factors, courts accord "paramount consideration" to the plaintiff's

choice of forum.  Air Line Pilots Ass'n v. E. Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987).

The "strong presumption in favor of the plaintiff's choice of forum . . . may be overcome only

when the private and public interest factors clearly point towards trial in the alternative forum."

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).  Accordingly, courts place a heavy

burden on the moving party to demonstrate that the action must be transferred.  See NAACP v.

Levi, 418 F. Supp. 1109, 1113-14 (D.D.C. 1976), superseded by statute on other

grounds as stated in, Williams v. Glickman, 936 F. Supp. 1, 4 (D.D.C. 1996) ("plaintiffs have

made what is presumed to be a considered and deliberate choice [that] should not be disturbed

absent a strong showing that their chosen forum is completely inappropriate and inconvenient"); Sparshott v. Feld Entm't, Inc., 89 F. Supp. 2d. 1, 9 (D.D.C. 2000) (where "factors bearing on the 'convenience of the parties' and the 'interests of justice' [were] in equipoise," the "deference owed to the plaintiffs' choice of forum tip[ped] the scale against the transfer motion").

Because Plaintiffs' choice of forum is appropriate and Defendant has not demonstrated that private and public interest factors clearly favor transfer under § 1404(a), Defendant's transfer motion should be denied.

**2.     Private Interest Factors Do Not Warrant Transfer**

(a)     This Action Has a Nexus to the District of Columbia and Plaintiffs Are Entitled to Deference in Their Choice of Forum

Because Defendant is headquartered in this District, venue is both proper and authorized under the law.  See 28 U.S.C. § 1391(e).  Defendant claims that the case should nevertheless be transferred to the Southern District of Mississippi because there is no alleged connection between the ultimate relief sought by Plaintiffs and the District of Columbia.  See Def. Mot. at 2. However, the connection to this District is implicit in the statutory authority delegated to the Army Corps of Engineers under Section 404 of the CWA.  The Army Corps' authority to act under the relevant statutes is a federal directive to a national agency with a chain of authority that ultimately rests with the Chief of Engineers at the Army Corps of Engineers Headquarters located in the District of Columbia.  In fact, the "Authority" provision of RGP SAM-20 specifically states that the permit is issued "[u]pon recommendation of the Chief of Engineers pursuant to the authority of Section 404 of the Clean Water Act, 33 U.S.C. § 1344."  RGP SAM-20 at 1 (Ex. A).

Defendant relies on this Court's opinion in Valley Community Preservation Commission v. Mineta, 231 F. Supp. 2d 23 (D.D.C. 2002) (Walton, J.) for the proposition that Plaintiffs'

choice of forum should receive lesser deference "when the activities have little, if any, connection with the chosen forum."  Def. Mot. at 5-6.  In <u>Valley Community</u>, this Court transferred an action challenging the Department of Transportation's approval of a major 37.5 mile highway project to the District of New Mexico.  This Court reasoned that because the Plaintiffs had alleged that the conclusions reached in the Department of Transportation's Environmental Assessment, Final Environmental Impact Statement, and Record of Decision were inaccurate or insufficient, the litigation would depend heavily on a close substantive review of the administrative record, which was located in New Mexico. <u>Valley Cmty.</u>, 231 F. Supp. 2d at 45.  Additionally, this Court stated that "Plaintiffs have chosen [the District Court for the District of Columbia] primarily it seems to take advantage of a procedural rule that guarantees them a hearing on their motion for injunctive relief within a specific amount of time." <u>Id.</u>

In contrast, the instant litigation pertains not to the substance of the Environmental Assessment, Environmental Impact Statement, Finding of No Significant Impact, or any other reports that were prepared in advance of issuing a Regional General Permit under Section 404, but rather to the fact that such reports were not prepared at all or were prepared inaccurately. <u>See</u> First Am. Compl. at ¶¶ 17-19, 30-35.  Further, Plaintiffs have not sought preliminary injunctive relief, and presently have no plans to do so.  Thus, Plaintiffs' choice to proceed in the District Court for the District of Columbia has no relation to the presence or absence of the local procedural rule pertaining to the timing of a hearing for preliminary injunctive relief, or to any other procedural rule available in this Court as opposed to any other District Court.

Moreover, Defendant's reliance on <u>Hawksbill Sea Turtle v. FEMA</u>, 939 F. Supp. 1 (D.D.C. 1996) and <u>Shawnee Tribe v. United States</u>, 298 F. Supp. 2d 21 (D.D.C. 2002) is misplaced as those cases are easily distinguishable.  In each of these cases, this Court's granting

of a motion to transfer hinged on the presence of pending actions involving related claims and

issues in the transferee courts.[3]  In this case, Plaintiffs are aware of no pending actions related to

the issuance of the RGP in the Southern District of Mississippi.

Accordingly, this action has a nexus to the District of Columbia and Plaintiffs are entitled

to deference in their choice of forum.  See Greater Yellowstone Coal. v. Bosworth, 180 F. Supp.

2d 124, 128 (D.D.C. 2001) (finding nexus between the operative facts and parties to the District

of Columbia sufficient to warrant deference to plaintiffs' choice of forum).

(b)    This Forum Is Equally Convenient for Parties, Witnesses, and Access to Proof

The convenience of the parties does not favor transfer to the Southern District of

Mississippi.  Defendant is headquartered in Washington, D.C. and is represented by counsel in

the Justice Department's Natural Resource Section, and in the Environmental Defense Section of

the Environment & Natural Resources Division, all of whom are located in the District of

Columbia.  In addition, Plaintiffs' counsel are representing plaintiffs on a pro bono basis, and do

not have offices or counsel in Mississippi.  If the case were transferred to the Southern District of

Mississippi, Plaintiffs' counsel would need to incur significant travel expenses.  There is a dearth

of public interest attorneys in Mississippi, and if pro bono counsel could not be secured in

Mississippi, then plaintiffs, all three of which are 501(c)(3) non-profit organizations, would be

forced to incur the potentially prohibitive expenses of hiring private counsel.

The convenience of witnesses also does not warrant transfer.  The convenience of

---

[3]    In Shawnee Tribe, in addition to the pending case in the transferee District, the case depended on the interpretation of a Native American Treaty and local property records -- subjects on which the local District was deemed to have greater knowledge and experience.  Likewise, in Hawksbill, the Virgin Islands District Court had already completed exhaustive evidentiary hearings.  None of these factors are present in the current matter.

witnesses is not an issue in an APA challenge to an administrative decision because the Court is limited to the administrative record in reaching its decision.  The Wilderness Soc'y, 104 F. Supp. 2d at 15; Vencor Nursing Ctrs., L.P. v. Shalala, 63 F. Supp. 2d. 1, 7 (D.D.C. 1999) (noting that convenience of witnesses was of little relevance because no evidentiary hearing or trial was foreseeable).  Since this case involves a review of the issuance of a permit under the relevant statutory structure, it is highly unlikely that witness testimony will be necessary.

Additionally, although Defendant has not yet produced the administrative record, any documents located outside the District of Columbia can easily be shipped or electronically transferred to Washington.  See Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc., 196 F. Supp. 2d 21, 36 (D.D.C. 2002) ("the location of documents, given modern technology, is less important in determining the convenience of the parties").

Moreover, because counsel for both parties are located in the District of Columbia, any records or documentary evidence that is located in Mississippi or at the Army Corps' Alabama field office will need to be shipped to the District of Columbia anyway, thus negating any possible convenience to the parties that would be achieved by a transfer.  See Air Line Pilots Ass'n, 672 F. Supp. at 527 ("No matter where the litigation proceeds, these materials will have to be photographed and shipped to Eastern's lawyers who live and work in the District area and to ALPA's lawyers who likewise live and work in D.C. . . . Once the material is photocopied, boxed, and sent to the District, it would not be a substantially greater hardship to send an additional copy of these documents to the courthouse.").  Accordingly, private factors do not favor transfer.

3.      **Public Interest Considerations Do Not Favor Transfer**

(a)      The Court's Relative Familiarity With the Governing Laws Weighs Against
Transfer

Defendant cannot justify transfer based on the familiarity or convenience of the court.

"A court's knowledge and familiarity with the issues presented can weigh for or against transfer

in the interest of justice." The Wilderness Soc'y, 104 F. Supp. 2d at 16.  This District has already

been found an appropriate forum to decide issues related to Section 404.

This Court has extensive familiarity with the statutes at issue in this case and their

interaction, including NEPA, Section 404 of the Clean Water Act, and the APA.  See, e.g., Nat'l

Wildlife Fed'n v. Norton, 332 F. Supp. 2d 170 (D.D.C. 2004) (adjudicating case involving

interaction of Section 404 of the CWA, NEPA, and ESA); Envtl. Def. v. United States Army

Corps of Eng'rs, 2007 U.S. Dist. LEXIS 67633 (D.D.C. 2007) (holding that the U.S. Army

Corps of Engineers' authorization of a flood control project in the St. Johns Bayou and New

Madrid Floodway on the west bank of the Mississippi River in southeastern Missouri was

arbitrary and capricious); Wilderness Soc'y v. Griles, 824 F.2d 4 (D.C. Cir. 1987) (involving

challenge to federal policy governing the allocation of submerged lands underneath non-

navigable waters in Alaska); Tongass Conservation Soc'y v. Cheney, 924 F. 2d 1137 (D.D.C.

1991) (Alaskan plaintiffs alleged that the Navy's proposal to build a submarine testing facility

violated NEPA); Branch Valley Flood Prot. Ass'n v. Stone, 820 F. Supp. 1 (D.D.C. 1993)

(Pennsylvania plaintiffs alleged that the Corps' approval of a flood control project in

Pennsylvania violated NEPA); Sierra Club v. Watkins, 808 F. Supp. 852 (D.D.C. 1993)

(California plaintiff alleged that federal agency's approval of a plan to transport spent nuclear

fuel through a Virginia port violated NEPA).

Defendant admits that "the present complaint hinges on questions of federal law."  Def.

Mot. at 4.  The ultimate relief requested by Plaintiffs is a declaration that Defendant's issuance of

the RGP is in violation of the APA, 5 U.S.C. § 706(2), the NEPA, 42 U.S.C. § 4332(2)(C), and

CWA regulation 33 C.F.R. § 320.4(b)(2)(v), and otherwise arbitrary, capricious, an abuse of

discretion, unconstitutional and contrary to law.  See First Am. Compl. at pp.13-15, ¶¶ 32-38.

This Court has repeatedly affirmed that this District is an appropriate forum to determine cases

involving challenges to federal agency actions such as those challenged here.  See The

Wilderness Soc'y v. Babbitt, 104 F. Supp. at 13 (denying transfer of an environmental action to

Alaska although federal lands at issue, a number of agency officials, and some plaintiffs were in

Alaska); Concerned Rosebud Area Citizens v. Babbitt, 34 F. Supp. 2d 775, 776 (D.D.C. 1999)

(declining transfer of NEPA challenge to South Dakota, the locale of subject, because the "issue

in this case is solely whether the federal government complied with federal law, and that is the

kind of question that is routinely and properly answered in this District and Circuit."); Nat'l

Wildlife Fed'n v. Westphal, Civ.A. 98-2700 (EGS), 1999 WL 1567731, 48 ERC 1639 (D.D.C.

Mar. 3, 1999) (denying transfer of NEPA and APA challenge to Mississippi, the site of the

challenged project, and stating that "this court routinely reviews agency decision sought under

the APA").

     In Greater Yellowstone Coalition v. Bosworth, this Court refused to transfer to Montana

a case challenging a cattle grazing permit on the basis that the permitted activities would

compromise Bison and their habitat outside Yellowstone National Park.  Defendants moved to

transfer the case to the District of Montana in part because there was a pending suit in that forum

concerning "closely related issues."  180 F. Supp. 2d at 129.  This Court found that although the

pending case in the transferee court related to the same permit and to the same land, it was not

sufficiently similar to compel the transfer of the case on the basis of judicial efficiency because

the pending suit addressed the protection of birds as opposed to Bison.  Additionally, this Court determined that the District of Columbia was the proper forum since the case involved the interpretation of federal statutes, and because federal government officials in Washington were involved in the decision-making process.  In view of the "totality of the circumstances," the case had "some national significance" regardless of the fact that many of the parties, the decision-makers, and the land covered in the challenged permit in Bosworth were located in Montana.  Id.

As in Bosworth, Plaintiffs' case involves the interpretation of federal statutes of national application, most notably the CWA, NEPA, and the APA.  The CWA has application to all fill or dredging activities in "waters of the United States" (33 U.S.C. §§ 1311(a), 1344(a) and (e)); the APA has application to permitting activities accomplished by federal administrative agencies and their delegates including the Army Corps of Engineers (5 U.S.C. § 704); and NEPA has application to all "major Federal actions significantly affecting the quality of the human environment . . . ."(42 U.S.C. § 4332(2)(C)).

Furthermore, the statutes and regulations that govern the Defendant in its evaluation and issuance of permits pursuant to the Section 404 Program are effective nationwide.  See NEPA, 42 U.S.C. § 4331 (b) (stating that agencies have an obligation "to use all practicable means, consistent with essential considerations of national policy, to improve and coordinate Federal plans, functions, programs and resources" to preserve and enhance the environment); Envtl. Defense Fund v. U.S. Army Corps of Eng'rs, 470 F.2d 289, 297 (8th Cir. 1972).  Because this Court has unassailable familiarity with the federal laws at issue in Plaintiffs' Complaint, there is no reason to transfer the case on these grounds.  Accordingly, this factor weighs against transfer.

(b)     The Relative Congestion of the Courts Does Not Merit Transfer to the Southern
        District of Mississippi

Defendant is seeking transfer to a court with markedly higher caseload congestion than

this Court.  For 2006, the last day for which readily accessible public data is available, the

averaged weighted filings per judge in this Court were 239, and 25 months passed on average

between the filing of a civil complaint and trial date.  By contrast, in the Southern District of

Mississippi, the averaged weighted filings per judge were 541 cases -- nearly double the case

volume in this Court -- with 25.5 months between complaint and trial date.  See U.S. District

Court Judicial Caseload Profile Report, *available at* http://www.uscourts.gov/cgi-bin/cmsd

2006.pl.

Much of the congestion in the Southern District of Mississippi relates to the deluge of

lawsuits that have been filed by homeowners against their respective insurers in the wake of

Hurricane Katrina.  For practical purposes, these lawsuits could only be filed in the Southern

District of Mississippi.  It is not appropriate to further burden that court.  Transferring the instant

matter to the Southern District of Mississippi will not only encumber the progress of this lawsuit,

it may impede the homeowners getting their suits heard.  The convenience of the courts and the

parties served by these courts favors this venue.  Therefore, transfer is not in the interest of

justice and public interest considerations do not favor transfer.

(c)     The Local Interest in Deciding Local Controversies at Home Does Not Outweigh
        Plaintiffs' Choice of Forum

Defendant argues that Plaintiffs' dispute concerns localized interests that are "limited to

the Southern District of Mississippi."  See Def. Mot. at 1.  However, the protection of wetlands

under the CWA is unequivocally a matter of national import.  The stated objective of the Clean

Water Act, 33 U.S.C. §§ 1251, et seq., is to "restore and maintain the chemical, physical, and

biological integrity of the Nation's waters."  33 U.S.C. § 1251.  Regulations promulgated

pursuant to the CWA govern the discharge of dredged and fill materials into "navigable waters of the United States," including wetlands. See Rapanos v. United States, 126 S. Ct. 2208 (2006). The CWA defines "navigable waters" as "the waters of the United States," 33 U.S.C. § 1362(7), and the Corps' regulations define such waters to include intrastate waters, "the use, degradation or destruction of which could affect interstate or foreign commerce," 33 C.F.R. § 328.3(a)(3) (emphasis added). See also U.S. Environmental Protection Agency, et al., "Clean Water Act: Restoring and Protecting America's Waters 39 (1998) ("Wetlands contribute to the environment in ways that parallel rain forests in more tropical climates and perform many functions that are important to the nation's economy and quality of life.").

The RGP was issued pursuant to Defendant's authority to issue such permits in Section 404 of the CWA. Neither Defendant nor any other interested party has attempted to construe the wetlands at issue in this dispute as anything other than navigable waters of the United States. If these waters are within the proper jurisdiction of the CWA, then they are waters that by definition "affect interstate or foreign commerce," and cannot legally be characterized as bearing a merely local significance.

Furthermore, this Court has historically retained cases nearly identical to the present lawsuit. In National Wildlife Foundation v. Westphal, 1999 WL 1567731, at *1-2 (D.D.C. 1999), this Court rejected a motion to transfer a challenge under the APA to an Army Corps of Engineers approval of a river maintenance project in northwestern Mississippi. Although the Court noted that "the project lands are located in Mississippi; the decision was made in Mississippi by Mississippians; and the documents regarding the decision are located in Mississippi," the Court rejected the Defendant's motion to transfer because "the Corps' statutory headquarters are located in the District [of Columbia]," record review negated issues of witness

convenience, and the project had effects that would "transcend state boundaries" even if the "physical impacts of the project [would] primarily be felt in Mississippi." Id.

Similarly, in National Wildlife Federation v. Norton, Case No. 03-1393 (D.D.C.), Plaintiff challenged the Army Corps' issuance of a permit under Section 404 of the CWA that would have authorized the operation of a limestone mine in a Florida wetland that was also the protected habitat of an endangered species. Defendant sought to transfer the case to the Middle District of Florida on the grounds that that District provided a local forum, and on the basis that the role of the national officials was somewhat limited. This Court denied the transfer motion by minute order. See id., Minute Order, entered Sept. 17, 2003 (Robertson, J.).

The location of the permit wetlands areas is not dispositive. In Friends of the Earth v. Army Corps of Engineers, Case No. 98-0801 (D.D.C.), Plaintiffs moved to transfer to the Southern District of Mississippi a challenge to the Army Corps' issuance of a permit to develop a dockside gambling casino on the St. Louis Bay in Mississippi. This Court denied the motion, finding that "[t]he circumstances presented in this case are insufficient, either in the name of convenience to the parties and witnesses or in the interests of justice, to override the deference normally paid to plaintiff's choice of forum and this Court's familiarity with the matters at issue." Id., Order Denying Motion to Transfer, entered Aug. 10, 1998 (Friedman, J.) (a true and correct copy of the Order is attached hereto as Exhibit B). Likewise, the instant case involves an interpretation of federal statutes based on an administrative record. This Court has not been asked to adjudicate any question of title, possession, or interest in land relating to the RGP. The Court need not travel to the area designated by the permit, or apply Mississippi state law. The issues are purely legal, and are limited to whether the Corps violated NEPA, the APA, and the CWA in issuing the RGP.

Plaintiffs have challenged a permit issued pursuant to the CWA, a statute with national applicability. While Plaintiffs' specific challenge relates to a permit that encompasses land located in Southern Mississippi, the potential impact of development includes economic devastation as well as the destruction of priceless historic and cultural resources. The costs of rehabilitating communities in the wake of Hurricane Katrina have by necessity overflowed into a need to tap national coffers. Enabling further destruction of these fragile communities is assuredly a question of national import. Thus, while Mississippi may in fact feel the greatest physical impact of this controversy, the controversy itself is not rooted in a local dispute to such an extent that it mandates transfer to the Southern District of Mississippi.

### III.    CONCLUSION

This Court is the appropriate forum to decide this case. Because the Defendant cannot demonstrate that any private or public interest considerations warrant transfer, Plaintiffs respectfully request that the Court defer to Plaintiffs' choice of forum and deny Defendant's Motion to Transfer this case to the United States District Court for the Southern District of Mississippi.

DATED: November 5, 2007                    Respectfully submitted,


                                            /s/  Charles W. Chotvacs
                                           Charles W. Chotvacs #484155
                                           BALLARD SPAHR ANDREWS & INGERSOLL, LLP
                                           601 13th Street, N.W.
                                           Suite 1000 South
                                           Washington, D.C.  20005-3807
                                           Telephone: (202) 661-2200
                                           Facsimile: (202) 661-2299
                                           E-mail: chotvacsc@ballardspahr.com

                                           Richard M. Hluchan (admitted *pro hac vice*)
                                           Alan K. Motes (admitted *pro hac vice*)
                                           Robert S. Baranowski, Jr (admitted *pro hac vice*)
                                           Jennifer E. Simon (admitted *pro hac vice*)
                                           BALLARD SPAHR ANDREWS & INGERSOLL, LLP
                                           1735 Market Street, 51st Floor
                                           Philadelphia, Pennsylvania  19103-7599
                                           Telephone: (215) 665-8500
                                           Facsimile: (215) 864-8999

                                           Daria E. Neal #479485
                                           ENVIRONMENTAL JUSTICE PROJECT
                                           LAWYERS' COMMITTEE FOR CIVIL
                                             RIGHTS UNDER LAW
                                           1401 New York Avenue, N.W.
                                           Suite 400
                                           Washington, D.C.  20005
                                           Telephone: (202) 662-8600
                                           Facsimile: (202) 637-3562

                                           *Counsel for Plaintiffs*
                                           *Turkey Creek Community Initiatives,*
                                           *North Gulfport Community Land Conservancy, Inc.,*
                                           *and The Gulfport Restoration Network*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of November, 2007, Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Transfer, along with a Proposed Order, were electronically filed with the Clerk of the Court using the Court's CM/ECF system, which shall send notification of filing to the following counsel of record for Defendant:

> Samantha Klein
> Trial Attorney
> United States Department of Justice
> Natural Resources Section
> P.O. Box 663
> Washington, D.C.  20044-0663
> E-mail: Samantha.klein@usdoj.gov
>
> Jon M. Lipshultz
> Environmental Defense Section
> Environment & Natural Resources Division
> U.S. Department of Justice
> P.O. Box 23986
> Washington, D.C.  20026-3986
> E-mail: jon.lipshultz@usdoj.gov
>
> *Counsel for Defendant*
> *United States Army Corps of Engineers*

                                                  /s/  Charles W. Chotvacs
                                                 Charles W. Chotvacs

*Turkey Creek Community Initiatives, et al. v. United States Army Corps of Engineers*
Case No. 1:07-CV-01507 (RBW)

# EXHIBIT A

Regulatory Division                                                    May 23, 2007
Coastal Branch

DEPARTMENT OF THE ARMY

REGIONAL GENERAL PERMIT SAM-20

RESIDENTIAL DEVELOPMENTS WITHIN THE MOBILE DISTRICT, REGULATORY
DIVISION'S GEOGRAPHIC BOUNDARY OF HANCOCK, HARRISON, JACKSON,
PEARL RIVER, STONE, AND GEORGE COUNTIES, MISSISSIPPI

<u>AUTHORITY</u>:  Upon recommendation of the Chief of Engineers, pursuant to Section 404 of
the Clean Water Act (33 U.S.C. § 1344), the U.S. Army Corps of Engineers, Mobile District,
Regulatory Division, is proposing to issue a Regional General Permit (RGP SAM-20), which
gives general authority for activities required for the construction or expansion of residential
building foundations and building pads and attendant features that are necessary for the use
and maintenance of the structures.  RGP SAM-20 is subject to the following special
conditions:

**SPECIAL CONDITIONS:**

1.  The work herein authorized includes activities required for the construction or expansion
of residential building foundations and building pads and attendant features that are
necessary for the use and maintenance of the structures within the Mobile District,
Regulatory Division's Geographic Boundary of Hancock, Harrison, Jackson, Pearl River,
Stone, and George Counties, Mississippi.  Attendant features include but are not limited to
roads, parking lots, garages, yards, utility lines and stormwater management facilities.
NOTE:  Stormwater management facilities may require separate state and federal permitting.
Attendant features do <u>not</u> include ponds, golf courses, fitness facilities, playgrounds, playing
fields, etc.  Examples of residential developments include multiple and single unit
developments.

2.  The cumulative total area of permanently impacted waters of the United States associated
with a single and complete project shall not exceed three acres under a single stand-alone
project for the entire tract of land (i.e. no piece-mealing is authorized by this RGP).  For <u>new</u>
residential developments, the total loss of waters of the United States authorized shall not
exceed three acres.  For <u>expansion</u> of residential developments, the originally filled areas
(those areas that previously impacted wetlands) and proposed fill areas, combined, shall not
exceed three acres.

3.  No work shall be performed until the applicant receives written authorization from the
District Engineer.

RGP-SAM-20
Page 2 of 7

4. No work is authorized in tidal waters. The term "tidal waters" means those waters that rise and fall in a predictable and measurable rhythm or cycle due to the gravitational pulls of the moon and sun. Tidal waters end where the rise and fall of the water surface can no longer be practically measured in a predictable rhythm due to masking by hydrologic, wind, or other effects.

5. No work is authorized in non-tidal waters that are adjacent to tidal waters. The term "adjacent" means bordering, contiguous, or neighboring. Wetlands separated from other waters of the U.S. by man-made dikes or barriers, natural river berms, beach dunes and the like are adjacent wetlands.

6. No speculative filling is authorized. If no residential structures (i.e houses or apartments) are constructed, prior to the expiration date of this RGP SAM-20 (or within 12 months of expiration date, if work has commenced or is under contract to commence), the applicant/ owner shall remove all fill material associated with the authorized activity. The removal of the fill material will be at the applicants/owners expense.

7. Recreational and/or aesthetic impoundments are not authorized.

8. RGP SAM-20 shall only be used for impacts to low quality wetlands, based on a USACE approved WRAP assessment. Low quality wetlands are defined by a score of 0.5 or less on a WRAP assessment.

9. No work is authorized in the following areas:

   a. Historical Preserves or parcels/tracts abutting these lands;

   b. National Estuarine Research Reserves or parcels/tracts abutting these lands;

   c. National Wildlife Refuges or parcels/tracts abutting these lands;

   d. Coastal Preserves or parcels/tracts abutting these lands;

   e. Conservation Lands, Conservation Easements, Conservation Trusts, USACE required mitigation areas or parcels/tracts abutting these lands;

   f. Pascagoula River Wildlife Management Area or parcels/tracts abutting these lands;

   g. Important Bird Areas (IBA), as defined by the National Audubon Society, or parcels/tracts abutting these lands;

h. Within or abutting projects that are currently being formulated as part of the Mississippi Coastal Improvements Program comprehensive plan for hurricane storm damage reduction and environmental restoration. The MsCIP will identify those areas within the 3 southern coastal counties (Jackson, Harrison, Hancock) which are considered priority for possible evacuation of structures with subsequent environmental restoration;

i. Within the Turkey Creek watershed;

j. Within 100-year floodplains, as documented by Federal Emergency Management Administration's (FEMA) Flood Insurance Rate Maps, FEMA-approved local floodplain maps and flood risk maps.

10. No registered properties or properties listed as eligible for inclusion in the National Register of Historic Places shall be affected. Permit submittal must include either a Phase I survey or a letter from the State Historic Preservation Officer, for Mississippi, confirming that no impacts to known cultural/historical resources will occur on the project site.

11. Should artifacts or archaeological features be encountered during project activities, work shall cease and the Mississippi State Historic Preservation Officer and the U.S. Army Corps of Engineers, Mobile District, Regulatory Division shall be consulted immediately. The USACE will initiate the Federal and State coordination required to determine if the remains warrant a recovery effort or if the site is eligible for listing in the National Register of Historic Places.

12. In the event any items falling under Native American Graves and Repatriation Act (NAGPRA) are discovered during construction, the appropriate persons, including state and tribal NAGPRA representatives will be notified immediately for further consultation.

13. This permit does not authorize stream channelization or relocation.

14. Stream impacts are limited to road crossings with a width not to exceed 30-feet for any single crossing. Each road crossing shall be culverted using bottomless arch culverts, box-culverts or other USACE approved methods. The authorized activities must not increase flooding, cause downstream bank erosion, increase peak discharge, or negatively impact the pre-project hydrologic flow characteristics or water quality of any affected stream. For the purpose of this condition, the 30-feet of impacts will be calculated into an acreage figure and included in the 3-acre limit. In addition, a 30-foot vegetated buffer will be maintained between the development and streams.

15. Sewage will be treated in publicly owned treatment works or in a septic system authorized by the State or County Health Department.

RGP-SAM-20
Page 4 of 7

16. No activity, authorized by this permit, shall increase flooding onto adjacent properties.

17. No authorization shall be granted for any project that may affect any threatened or endangered species and/or their critical habitats. Permit submittal must include a Federally-listed threatened and endangered animal and plant species survey. If Federally-listed animal and/or plant species are found on the site, no activities will be authorized until the U.S. Army Corps of Engineers and U.S. Fish and Wildlife Service have completed consultation for the proposal, under Section 7 of the Endangered Species Act. No activity shall be authorized which:

a) may affect: any other Federally listed threatened or endangered species; or

b) may destroy or adversely modify: designated critical habitat for any Federally listed threatened or endangered species.

18. Compensatory mitigation, for unavoidable impacts to waters of the United States, will be required through the purchase of in-kind credits at a USACE-approved mitigation bank. The applicant is required to use the particular bank's ratio in determining the amount of credits to be purchased. The applicant is required to purchase credits from mitigation banks whose service area includes the project area (i.e. same watershed as impacts). If a project does not fall within any mitigation bank's service area, the applicant shall then purchase in-kind mitigation bank credits from the next closest USACE-approved mitigation bank to the project site. If stream mitigation credits are not available from a mitigation bank, the applicant is required to provide appropriate mitigation and will use the most current approved stream functional assessment method. Proof of mitigation credit purchase shall be provided to the U.S. Army Corps of Engineers, Mobile District, Regulatory Division, Post Office Box 2288, Mobile, Alabama 36628-0001, after receiving USACE authorization and prior to the start of any authorized work.

19. The applicant must allow representatives, from the U.S. Army Corps of Engineers, Mobile District, Regulatory Division, to inspect the authorized activity at any time deemed necessary to ensure that it is being or has been accomplished in accordance with the terms and conditions of this RGP.

20. Prior to construction, the limits of the proposed fill areas shall be clearly flagged and staked by the agent and/or contractor. All construction personnel shall be shown the location(s) of all wetland areas outside of the construction area to prevent encroachment from heavy equipment into those areas. In addition, all filled areas shall be completely contained through installation of toed-in silt fencing and staked hay bales and maintained until work has been completed.

RGP-SAM-20
Page 5 of 7

21. Any temporary impacts shall be restored to pre-project conditions within 30 days of completion of work associated with this permit.

22. All persons/contractors involved in this permitted activity shall be provided copies of the permit in its entirety. A copy shall remain on site at all times during construction.

23. Fill material used with this project shall be limited to suitable, clean fill material, which excludes material such as trash, debris, car bodies, asphalt, construction materials, concrete block with exposed reinforcement bars, and any soils contaminated with any toxic substance in toxic amounts (see Section 307 of the Clean Water Act).

24. All slopes shall be stabilized with sod, degradable mats and/or seed and mulch. Erosion controls in the form of toed-in silt fencing and staked hay bales will be installed and maintained until the vegetative cover is established.

25. The permittee shall notify the U.S. Army Corps of Engineers, upon commencement and completion of work authorized by this RGP. Such notification must be provided within 5 days of initiation and completion of the authorized work. The notification shall be submitted to the U.S. Army Corps of Engineers, Mobile District, Regulatory Division, Post Office Box 2288, Mobile, Alabama 36628-0001.

26. Within 60 days of completion of the authorized work, the RGPs Self-Certification Statement of Compliance must be completed and submitted to the U.S. Army Corps of Engineers. Mail the completed form to the U.S. Army Corps of Engineers, Mobile District, Regulatory Division, Post Office Box 2288, Mobile, Alabama 36628-0001.

27. If you sell the property associated with this RGP, you must complete and submit the Department of the Army Permit Transfer Request. Mail the completed form to the U.S. Army Corps of Engineers, Mobile District, Regulatory Division, Post Office Box 2288, Mobile, Alabama 36628-0001.

28. Conformance with descriptions and quantities contained herein does not necessarily guarantee authorization under this Regional General Permit. The District Engineer reserves the right to require that any request for authorization under this Regional General Permit be evaluated as a standard permit. In addition, this RGP does not obviate the need for the permittee to obtain other Federal, state, or local authorizations required by law, nor does it grant any property rights or exclusive privileges.

29. Permit applications shall be submitted to the U.S. Army Corps of Engineers, Mobile District, Regulatory Division, Coastal Mississippi Branch, Post Office Box 2288, Mobile, Alabama 36628-0001, using the Mississippi Joint Application form and must include the following:

RGP-SAM-20
Page 6 of 7

a. A delineation of wetlands and/or other waters of the U.S. The onsite wetlands/waters of the U.S. must be flagged and easily accessible.

b. Data sheets, as outlined in the Corps of Engineers Wetlands Delineation Manual, Technical Report Y-87-1, U.S. Army Engineer Waterways Experiment Station, Vicksburg, Miss., 1987 (87 Manual).

c. 8-1/2" X 11" plan-view drawings of existing and proposed site conditions.

d. 8-1/2" X 11" cross-sectional drawings for road crossings. Road crossings must use bottomless arch culverts, box culverts, or other USACE approved methods and the drawing must include elevation and dimensions.

e. Topographic map; indicating project boundary and Latitude/Longitude in degrees, minutes, and seconds.

f. Soil survey.

g. An aerial photo or ground-level pictures of the site, depicting current conditions.

h. Location map.

i. Mitigation calculations/bank name.

j. WRAP assessment.

k. 100-year floodplain documentation through Federal Emergency Management Administration's (FEMA) Flood Insurance Rate Maps, FEMA-approved local floodplain maps and flood risk maps.

l. Documentation that work is not within or on parcels/tracts abutting areas identified in Special Condition 8 above.

m. Statement as to how project relates to redevelopment due to Hurricane Katrina.

n. Demonstration that the project will not increase flooding onto adjacent properties.

o. A statement that sewage will be treated in publicly owned treatment works or in a septic system authorized by the State or County Health Department.

p. A clearance letter from SHPO or Phase I survey.

RGP-SAM-20
Page 7 of 7

q. A Federally-listed threatened and endangered animal and plant species survey.

r. A written statement explaining how avoidance and minimization for losses of waters of the United States were achieved on the project site.

s. Demonstration that the activity will not increase flooding, cause downstream bank erosion, increase peak discharge, or negatively impact the pre-project hydrologic flow characteristics or water quality of any affected stream.

30. RGP SAM-20 shall be valid until **May 23, 2009**, unless suspended or revoked by issuance of a public notice by the District Engineer. If RGP SAM-20 expires or is revoked prior to completion of the authorized work, authorization of activities that have commenced or are under contract to commence in reliance on RGP SAM-20 will remain in effect provided the activity is completed within 12 months of the date RGP SAM-20 expired or was revoked.

All applications for use by the RGP SAM-20 will be sent to the applicable State and Federal agencies for a 7-day (working days) coordination period. After coordination has concluded, the U.S. Army Corps of Engineers will either issue the RGP, issue the RGP with conditions, or elevate the application to an Individual/Standard Permit review. At any time, for any reason, the U.S. Army Corps of Engineers reserves the right to elevate an application, for use of this RGP, to an Individual Standard Permit review.

MOBILE DISTRICT
U.S. Army Corps of Engineers

# DEPARTMENT OF THE ARMY PERMIT TRANSFER REQUEST

RGP SAM-20 PERMIT NUMBER: **SAM-**_____ - _____ - _____

When the structures or work verified by this permit are still in existence at the time the property is transferred, the terms and conditions of this permit will continue to be binding on the new owner(s) of the property.

To validate the transfer of this permit and the associated liabilities associated with compliance with its terms and conditions, the transferee should sign and date below. Following completion, the form should be returned to the U.S. Army Corps of Engineers, Mobile District, Regulatory Division, Post Office Box 2288, Mobile, Alabama 36628-0001.

_____
(TRANSFEREE - SIGNATURE)

_____
(DATE)

_____
(NAME - PRINTED)

_____
(SUBDIVISION)

_____
(LOT/BLOCK)

_____
(MAILING ADDRESS)

_____
(CITY, STATE, ZIP CODE)

# SELF-CERTIFICATION STATEMENT OF COMPLIANCE

RGP SAM-20 PERMIT NUMBER:  <u>**SAM-**</u>_____ - _____ - _____

Permittee's Name & Address (Please print or type):_____

_____

Telephone Number:_____

Location of the Work:_____

_____

Date Work Started:_____ Date Work Completed:_____

Description of the Work (e.g. bank stabilization, residential or commercial filling, docks, dredging,
etc.):_____

_____

Acreage or Square Feet of Impacts to Waters of the United States: _____

Describe Mitigation completed:_____

_____

Describe any Deviations from Permit (attach drawing(s) depicting the
deviations):_____

_____

*********************

I certify that all work and mitigation was done in accordance with the limitations and conditions
as described in the permit.  Any deviations as described above are depicted on the attached
drawing(s).

_____
       Signature of Permittee

_____
              Date

*Turkey Creek Community Initiatives, et al. v. United States Army Corps of Engineers*
Case No. 1:07-CV-01507 (RBW)

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH, INC., | ) |
| | ) |
| and | ) |
| | ) |
| GULF ISLANDS CONSERVANCY, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES ARMY CORPS OF | ) |
| ENGINEERS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. 98-0801 (PLF)

**FILED**

AUG 10 1998

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## ORDER

Upon consideration of the government's motion to transfer pursuant to 28

U.S.C. § 1404(a), plaintiff's opposition and the government's reply, the Court in its discretion

concludes that the government's motion should be denied. The government has failed to show

that transfer is appropriate under 28 U.S.C. § 1404(a) in this case, especially in light of the

fact that this Court has previously considered a case involving virtually the same parties, facts

and geographical location, as well as many of the same legal issues. See Gulf Islands

Conservancy v. United States Army Corps of Engineers, Civil Action No. 94-2567 (Friedman,

J.). The totality of the facts and circumstances that led Judge Urbina to order transfer in Trout

Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13 (D.D.C. 1996), are not

present in this case. The circumstances presented in this case are insufficient, either in the

name of convenience to the parties and witnesses or in the interests of justice, to override the

deference normally paid to plaintiff's choice of forum and this Court's familiarity with the matters at issue. See Dooley v. United Technologies Corp., 786 F. Supp. 65, 82 (D.D.C. 1992). Accordingly, it is hereby

ORDERED that the government's Motion to Transfer Venue to the Southern District of Mississippi, Southern Division is DENIED; it is

FURTHER ORDERED that upon review of the file in this case and the file in Civil Action No. 98-1699, and having considered the representations of counsel for plaintiffs and the government in open Court, the Court concludes that this case, Civil Action No. 98-0801, and Civil Action No. 98-1699 present sufficiently similar and related issues of fact and law, warranting consolidation. The Clerk of the Court shall therefore consolidate Civil Action No. 98-0801 and Civil Action No. 98-1699; and it is

FURTHER ORDERED that counsel in both cases shall meet and confer and file a proposed scheduling order by August 31, 1998, which places the consolidated cases on the same track.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 7/10/98

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TURKEY CREEK COMMUNITY INITIATIVES, NORTH GULFPORT COMMUNITY LAND CONSERVANCY, INC., AND THE GULF RESTORATION NETWORK | : : : : : : | |
| Plaintiffs, | : : : | |
| v. | : : | Civil Action No.  1:07-cv-01507 (RBW) |
| UNITES STATES ARMY CORPS OF ENGINEERS | : : : : | |
| Defendant. | : : : : | |

**PROPOSED ORDER**

This matter is before the Court on Defendant's Motion to Transfer Venue to the Southern

District of Mississippi.  Upon consideration of Defendant's Motion, Plaintiffs' opposition

thereto, and the record in this case, it is hereby

ORDERED that Defendant's Motion to Transfer Venue to the Southern District of

Mississippi is DENIED; and it is further

ORDERED that Defendant's deadline for filing a response to Plaintiffs' First Amended

Complaint for Declaratory and Injunctive Relief be extended 30 days from the date of this Order.

Dated this _____ day of _____ , 2007

_____
Reggie B. Walton
United States District Judge

<u>**ATTORNEYS TO BE NOTICED**</u>

<u>Defendant's Counsel</u>:

SAMANTHA KLEIN
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
E-mail: samantha.klein@usdoj.gov


JON M. LIPSHULTZ
Environmental Defense Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986
E-mail: jon.lipshultz@usdoj.gov


<u>Plaintiffs' Counsel</u>:

CHARLES W. CHOTVACS
BALLARD SPAHR ANDREWS & INGERSOL, LLP
601 13th Street, NW
Suite 1000 South
Washington, DC 20005-3807
E-mail: chotvacsc@ballardspahr.com

ALAN K. MOTES
BALLARD SPAHR ANDREWS & INGERSOL, LLP
1225 17th Street
Suite 2300
Denver, CO 80202-5596
E-mail: motesa@ballardspahr.com

JENNIFER E. SIMON
BALLARD SPAHR ANDREWS & INGERSOL, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
E-mail: simonj@ballardspahr.com

RICHARD M. HLUCHAN
BALLARD SPAHR ANDREWS & INGERSOL, LLP
Plaza 1000
Main Street
Suite 500
Voorhees, NJ 08043-4636
E-mail: hluchan@ballardspahr.com

ROBERT S. BARANOWSKI
BALLARD SPAHR ANDREWS & INGERSOL, LLP
Plaza 1000
Main Street
Suite 500
Voorhees, NJ 08043-4636
E-mail: baranowskir@ballardspahr.com

DARIA E. NEAL
ENVIRONMENTAL JUSTICE PROJECT
LAWYERS' COMMITTEE FOR CIVIL
  RIGHTS UNDER LAW
1401 New York Avenue, N.W.
Suite 400
Washington, D.C.  20005
E-mail: dneal@lawyerscommittee.org