IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
TURKEY CREEK COMMUNITY INITIATIVE,      )
NORTH GULFPORT COMMUNITY LAND           )
CONSERVANCY, INC., and THE GULFPORT     )
RESTORATION NETWORK,                    )
                                        )
              Plaintiffs,               )
                                        )
v.                                      )    Civ. No. 1:07-cv-01507
                                        )    Judge Reggie B. Walton
UNITED STATES ARMY CORPS OF             )
ENGINEERS                               )
                                        )
              Defendant.                )
_____)
```

## DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE

Plaintiffs challenge U.S. Army Corps of Engineers (Corps) Regional General Permit

SAM-20 (RGP) as violating the National Environmental Policy Act, Clean Water Act, and

Administrative Procedures Act. The RGP covers six counties in Southern Mississippi: Hancock,

Harrison, Jackson, Pearl River, Stone, and George Counties. The counties covered by the RGP

all lie within the Southern District of Mississippi, and two of the three Plaintiff organizations

reside there. In addition, the alleged environmental impacts will be directly felt by citizens in

Coastal Mississippi. Therefore, the interests of justice will best be served by transferring the

action to the Southern District of Mississippi.

**ARGUMENT**

Under 28 U.S.C. § 1404(a), this Court considers the principal factors for transfer of venue through a balancing of private and public interests.  See, e.g., Berenson v. National Fin. Servs., LLC, 319 F. Supp. 2d 1 (D.D.C. 2004); Valley Cmty. Preservation Comm'n v. Mineta, 231 F. Supp. 2d 23, 44-45 (D.D.C. 2002).  Here, the lack of connection between this action and the District of Columbia, combined with the controversy's local nature, compels transfer to the Southern District of Mississippi.

**I.      Corps Headquarters Officials Played No More Than a Coordination Role in Issuing the RGP.**

The private factors to consider in deciding a motion to transfer venue include: 1) plaintiff's choice of forum; 2) defendant's choice of forum; 3) where the claims arose; 4) convenience of the parties; 5) convenience of the witnesses; and 6) ease of access to sources of proof.  Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996).  Although the plaintiff's choice of forum is normally given deference, that deference is weakened, and the defendant's burden lessened, when there is no connection between the activities at issue and the plaintiff's chosen forum.  Valley Cmty., 231 F. Supp. 2d at 44; Trout Unlimited, 944 F. Supp. at 17 (citing Harris v. Republican Airlines, Inc., 699 F. Supp. 961, 963 (D.D.C. 1988)).  Plaintiffs here claim a nexus to the District of Columbia (Pls.' Mem. of P. & A. in Opp'n to Def.'s Mot. to Transfer 7 (Doc. No. 15)), but offer little elaboration on what that connection is.[1]  Absent a

---

[1] In support of their contention, Plaintiffs attempt to distinguish Valley Cmty. Preservation Comm'n v. Mineta, 231 F. Supp. 2d 23 (D.D.C. 2002), by arguing that they are not challenging the substance of environmental review.  Pls.' Mem. 5-6.  It is apparent from the face of their Amended Complaint, however, that they are challenging the adequacy of the Corps's Environmental Assessment for the RGP.  First Am. Compl. ¶ 38(b) (Doc. No. 9) (alleging the

(continued...)

meaningful connection, Plaintiffs' choice of forum should be given little weight.  See Valley

Cmty., 231 F. Supp. 2d at 44.

Plaintiffs' only two articulated links between the present action and the District of

Columbia are the location of the Corps's national headquarters offices and the applicable law's

national scope.  The latter is irrelevant in the nexus analysis.  See, e.g., id. at 45 (noting that one

federal court is no better suited than another to adjudicate questions of federal law).  The former

would only be significant if Corps officials in the headquarters office played a significant role in

issuing the RGP.  See, e.g., Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 127-28

(D.D.C. 2001) (denying transfer where high-ranking officials in the District of Columbia were

involved in issuing the permit, including holding meetings on the permit in Washington, D.C.);

Wilderness Soc'y v. Babbitt, 104 F. Supp. 2d 10, 14 (D.D.C. 2000) (denying transfer where the

Secretary of Interior had traveled to the project site in Alaska, made public comments on his

power to prevent the lease in question, and personally signed the record of decision and briefed

the public in the District of Columbia).

Here, Corps headquarters officials did nothing more than follow the permitting process

from afar.  The challenged federal decisions were made by the Corps District Office in Mobile,

Alabama.  Thus, the case closely follows Trout Unlimited, where all the decision-making took

place outside the District of Columbia and the transfer motion was granted.  See 944 F. Supp. at

17-18.  While the District of Columbia may be a more convenient forum for Plaintiffs' attorneys,

---

[1]/(...continued)
RGP violated federal law and Corps regulations by authorizing the fill of up to three acres of
wetlands).  Furthermore, as is the case with the present action, the Valley Community court also
recognized that the transferee forum was "where plaintiffs' claims arose."  231 F. Supp. at 45.

it holds no connection to the Plaintiffs or any of the operative facts giving rise to the present

action.  Lacking that connection, Plaintiffs' choice of forum deserves little deference and the

private factors, as outlined in Defendant's Memorandum of Points and Authorities in Support of

Defendant's Motion to Transfer Venue (Doc. No. 12-3), weigh in favor of transfer to the

Southern District of Mississippi.

**II.     Applicability of National Laws Does Not Outweigh the Local Issues Associated with the RGP, Thus Warranting Transfer to the Southern District of Mississippi in the Interests of Justice.**

        Like the private considerations, Plaintiffs' arguments under the <u>Trout Unlimited</u> public

interest factors fail to counter the strong arguments in favor of transfer to the Southern District of

Mississippi.  Public considerations include: 1) the transferee district's familiarity with the

governing law; 2) congestion of the transferor and transferee districts;[2] and 3) "the local interest

in deciding local controversies at home."  <u>Trout Unlimited</u>, 944 F. Supp. at 16.  Here, the RGP's

role in post-hurricane regional redevelopment is a pointedly local issue best addressed by courts

in Mississippi.

        In concluding that public interest does not weigh in favor of transfer, Plaintiffs argue that

the District Court for the District of Columbia is an appropriate forum to decide issues related to

---

[2] In support of the court congestion factor, Plaintiffs submit statistics on filings per judge and average time between filing and trial date.  Pls.' Mem. 12.  Plaintiff's reliance on these statistics is in error.  First, there is no discernable difference between the District of Columbia and Southern District of Mississippi on the average time it takes a case to reach trial.  <u>See</u> Pls.' Mem. 12.  Second, as Plaintiffs acknowledge (Pls.' Mem. 8), the present action will be adjudicated on an administrative record and trial is unlikely.  <u>See also</u> <u>Envtl. Def. v. U.S. Dep't of Transp.</u>, 2007 WL 1490478 at *4 n.10 (D.D.C. May 18, 2007) ("Nor is the relative congestion of the courts dispositive. The parties do not dispute that the case will likely be decided on cross motions for summary judgment.").

Clean Water Act § 404 permits. Pls.' Mem. 9.[3/] Plaintiffs are correct to the extent that limits on jurisdiction and venue would not prevent this action from going forward in this Court. Plaintiffs, however, misinterpret Defendant's reasons for requesting transfer. Defendant does not argue that the District of Columbia is an inappropriate forum for deciding questions of federal law. Rather, given the RGP's decidedly local issues and alleged impacts, the Southern District of Mississippi is the *more appropriate* venue in which to decide the permit's conformance with federal law. Further, the cases Plaintiffs cite to support their contention that transfer is not warranted (Pls.' Mem. 10-11) do not factually align with the present controversy.

Plaintiffs, for example, present a detailed discussion on Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d at 124. See Pls.' Mem. 10-11. As highlighted by this Court later in Valley Community, 231 F. Supp. at 46-47, two specific facts led the Court to deny the transfer motion in Greater Yellowstone Coalition: the role of high-ranking government officials in the District of Columbia, and forum shopping concerns illustrated by defendant's request for transfer to a specific judge. Greater Yellowstone Coal., 180 F. Supp. at 128-29. Neither is present in the current action. Corps headquarters officials did nothing more than follow the permitting process from afar. Furthermore, the Environmental Assessment was prepared, reviewed, and approved by Mobile District staff and supervisors. See Envtl. Assessment 66, available at http://www.sam.usace.army.mil/rd/reg/rgp/SAM-20.htm.

---

[3/] Plaintiffs go on to argue that transfer is unwarranted given this Court's "unassailable familiarity" with federal laws that are effective nationwide. Pls.'Mem. 11. But, as noted above and in Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Transfer Venue, the fact that this controversy involves interpretations of federal statutes "does not automatically make the District of Columbia more competent to decide the case." Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006).

Similarly, as noted above, the Court in <u>Wilderness Society v. Babbitt</u> denied transfer because federal officials in the District of Columbia where uniquely involved in the underlying action. 104 F. Supp. 2d at 14.  <u>Concerned Rosebud Area Citizens v. Babbitt</u> involved a situation where time constraints required a quick resolution of the case. 34 F. Supp. 2d 775, 776 (D.D.C. 1999). And in <u>National Wildlife Federation v. Westphal</u>, the plaintiff was actually a District of Columbia resident. No. 98-2700, 1999 WL 1567731 at *1 (D.D.C. Mar. 3, 1999). Here, Corps headquarters officials did nothing more than follow the permitting process from afar; Defendant is unaware of any time constraints that require a faster resolution of the controversy than normal; and none of the Plaintiffs are District of Columbia residents.

More importantly, the local nature of the RGP and the redevelopment problems it proposes to remedy warrant transfer to the Southern District of Mississippi. <u>See</u> <u>Nat'l Wildlife Fed'n v. Harvey</u>, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (noting the recognized importance of having local issues decided at home). Plaintiffs themselves recognize the RGP's local nature. <u>See</u> Pls.' Mem. 2-3, 15 (alleging the potential for increased flooding, ecological damage, and impacts to historic and cultural resources). While the devastation following Hurricane Katrina has been felt nationwide, the RGP focuses on residential redevelopment, a truly local issue best decided in the communities that will be directly benefitted or impacted. In an attempt to nationalize the issue, Plaintiffs argue the Clean Water Act's national scope elevates the matter to one of national concern. Pls.' Mem. 12-13. The simple fact, however, that a statute regulates conduct on a national level does not make every project authorized pursuant to its authority an issue of national concern.

Plaintiffs support their far-reaching argument by analogizing to several Clean Water Act

cases in which transfer was not granted.  Pls.' Mem. 13-14.  Again, however, each case

contained circumstances that do not exist in the present action.  In National Wildlife Federation

v. Westphal, as noted above, transfer was denied where the plaintiff was a District of Columbia

resident.  1999 WL 1567731 at *1.  Transfer was denied by minute order in National Wildlife

Federation v. Norton, but the plaintiffs' brief on the transfer issue notes that the challenged

permit was for a mining operation to which other challenges in the District Court for the District

of Columbia had already been made.  Pls.' Mem. in Opp'n of Defs.' Mot. to Transfer Venue at

7-9, Nat'l Wildlife Fed'n v. Norton, No. 03-1393 (D.D.C. Sept. 12, 2003).  Similarly, transfer

was denied in Friends of the Earth v. Army Corps of Engineers where the court had previously

decided a case with the same parties, facts, geographical location, and legal issues.  Order of J.

Friedman, No. 98-0801 (D.D.C. Aug 10, 1998) (Pls.' Ex. B).  By contrast, all Plaintiffs in the

present action reside in the Southern District of Mississippi or the surrounding area, and the

Defendant is not aware of any additional past or present challenges to the RGP in the District of

Columbia.

Despite Plaintiffs' contentions, the balancing of public and private interests do not point

to the District of Columbia as the most appropriate venue.  Corps headquarters officials did

nothing more than follow the process from afar, and the RGP addresses post-hurricane

residential redevelopment in Coastal Mississippi.  The predominant interests of Mississippi and

its citizens in this localized issue are indisputable.  Thus, the interests of justice compel that the

present controversy's local issues be decided at home and the case transferred to the Southern

District of Mississippi.

**CONCLUSION**

For the reasons stated above and in Defendant's Memorandum of Points in Authorities in Support of Defendant's Motion to Transfer Venue, Defendant respectfully requests that the Motion to Transfer Venue to the Southern District of Mississippi be granted, and the time to answer Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief be extended until thirty days following resolution of the venue issue, or as the transferee court may see fit.

Date: November 13, 2007

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General

By:      _/s/ Samantha Klein_____
SAMANTHA KLEIN
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0474
Fax: (202) 305-0506
Email: samantha.klein@usdoj.gov

  _/s/ Jon M. Lipshultz_____
JON M. LIPSHULTZ
Environmental Defense Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 23986
Washington, D.C.  20026-3986
Tel: (202) 514-2191
Email: jon.lipshultz@usdoj.gov

_/s/ Kristofor R. Swanson_
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Tel: 202-305-0248
Fax: 202-305-0506
Email: kristofor.swanson@usdoj.gov

Of Counsel:

THOMAS G. F. LANDRY
Assistant District Counsel
U.S. Army Corps of Engineers
Mobile District
Mobile, Alabama 36628

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2007, the above reply memorandum was filed with the United States District Court for the District of Columbia's electronic filing system, for which the following attorneys are registered to be noticed:

Charles Wheeler Chotvacs
chotvacsc@ballardspahr.com

Alan K. Motes
motesa@ballardspahr.com

Constantinos G. Panagopoulos
cgp@ballardspahr.com

I also hereby certify that copies were sent via Federal Express to:

Jennifer E. Simon
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103

Richard M. Hluchan
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000
Main Street
Suite 500
Voorhees, NJ 08043-4636

Robert S. Baranowski
Ballard Spahr Andrews & Ingersoll, LLP
Plaza 1000
Main Street
Suite 500
Voorhees, NJ 08043-4636

*/s/ Kristofor R. Swanson*
Kristofor R. Swanson

-10-